Erin M. McNULTY and Brian J. Erzar, on behalf of themselves and all others similarly situated, Appellees,

v.

H&R BLOCK, INC.; H&R Block Group, Inc.; H&R Block Services, Inc.; H&R Block Tax Services, Inc.; H&R Block Eastern Tax Services, Inc.; H&R Block Eastern Tax Company, LLC; H&R Block Eastern Enterprises, Inc.; and H&R Block Eastern Support Services, LLC, Appellants.

Superior Court of Pennsylvania.

Argued Dec. 9, 2003.
Filed Feb. 26, 2004.

N. Louise Ellingsworth, Kansas City, MO, for appellants.

Todd J. O'Malley, Scranton, Peter D. Winebrake, Philadelphia and Gerard Langan, Scranton, for appellees.

Before: KLEIN, BENDER and OLSZEWSKI, JJ.

KLEIN, J.

¶ 1 Plaintiffs, Erin McNulty and Brian Erzar, filed this class action lawsuit alleging that defendants ("Block") charged its clients millions of dollars in unnecessary fees for filing their tax returns electronically ("e-filing"). They further allege that Block deceptively said that the e-filing fee was a necessary and required component of standard tax preparation, when in fact it cost Block next to nothing to file electronically, as compared to filing traditional paper returns.

¶ 2 Block filed preliminary objections to the complaint claiming that an arbitration provision in a separate contract with Household Bank requires these claims to be arbitrated individually and not tried in court as a class action.[1] The trial court

---

1. Block raised several other issues in preliminary objections as well. None of those issues are before us, as those rulings are interlocu-

determined that the arbitration provision did not cover the present claims because the e-filing fee was too removed from the loan application contract that contained the arbitration provision. After careful review of the parties' submissions, relevant case law, statutes, regulations and the record, we affirm, both on the rationale of the lower court and additional grounds.

¶ 3 In reviewing a ruling on preliminary objections, we must accept as true all well pled, material allegations in the complaint. *DeFazio v. Gregory*, 2003 PA Super 418, 836 A.2d 935. Further, in determining the propriety of a denial of a preliminary objection in the nature of a petition to compel arbitration, we examine the trial court's ruling for abuse of discretion or error of law. *Pittsburgh Logistics Systems, Inc. v. Professional Transportation and Logistics, Inc.*, 803 A.2d 776 (Pa.Super.2002). Our scope of review is plenary. *Huegel v. Mifflin Construction Company, Inc.*, 796 A.2d 350 (Pa.Super.2002).

¶ 4 Block raises three issues on appeal: (1) The trial court improperly determined the claims presented are subject to judicial determination rather than allowing the arbitration panel to decide the issue; (2) the trial court erred in determining the claims did not involve the "relationship" between the parties, as described in the arbitration provision; and (3) the trial court erred in concluding the claims were not "intermeshed" with the application for the loan.

¶ 5 Because many of the facts necessary to resolve this appeal apply to multiple issues, we will address the issues as a whole. Before we address the merits, a review of the factual background is necessary.

**Background**

¶ 6 Block is a well-known, nationwide tax preparation service. One of the services offered by Block is known as "e-filing." The client's tax return is prepared on computer and is transmitted to the Internal Revenue Service electronically, rather than by the traditional paper return. In general, an electronic return is processed by the government faster than a paper return. A refund check, if the taxpayer is so entitled, is sent out in a shorter period of time. It is alleged by plaintiffs that Block charged McNulty a $37.00 fee to file electronically in both 2001 and 2002. Erzar was allegedly charged a $34.00 electronic filing fee in 2000.

¶ 7 Another option offered is a refund anticipation loan ("RAL").[2] This is a separate agreement (not with Block) from the actual filing of the tax return and there is no requirement that the client obtain an RAL. A taxpayer can obtain a loan, in this case from Household Bank, using the promise of a tax refund as security for the loan. While a refund processed through electronic filing will reach the taxpayer usually within two weeks, the RAL provides cash within one to four days. This service requires a separate contract with Household. The contract states that Block is the electronic return originator (ERO), typically as either tax preparer and/or filer. The contract also makes clear that Block has no other connection to the loan, specifically denying Block status as a fiduciary or agent.

tory. Only the denial of transfer to arbitration is immediately appealable.

2. An RAL is a short-term, high-interest loan that is secured by the anticipated tax refund.

The RAL application form indicates that the estimated annual percentage rate based on loan amount and finance fee charged can be as high as 264%. The RAL fees are not at issue in this law suit.

¶ 8 Thus, Block is not an actual party to the loan—it provides no money to the client, is not responsible for the repayment of the RAL, nor does it process the loan. Block's connection to the loan process is that it may have filled out the tax form and it sent the form to the IRS.[3] The loan amount Household is willing to provide is presumably based upon the amount of the anticipated tax refund.

¶ 9 Although not a party to the contract itself, the contract also contains an arbitration clause that includes Block as a beneficiary to the clause. Household requires that the RAL applicant file electronically with Block and, apparently for that reason, includes Block in the arbitration clause. In certain circumstances this makes a certain amount of sense as a complaint about the loan may include some allegation against Block. The arbitration clause has, at least partially, the purpose of guaranteeing all claims regarding the loan be heard together.

¶ 10 The arbitration clause contains very broad language regarding the scope and application of the clause. Specifically, the clause states:

By signing this RAL application or the Loan Agreement (collectively the "Documents"), I hereby agree that any claim, dispute or controversy, whether in contract, tort (intentional or otherwise), whether pre-existing, present or future, and including constitutional, statutory, common law, regulatory and equitable claims with HB (as defined at the end of this paragraph) in any way relating to (a) the Documents or a similar documents [sic] for prior years . . . and/or (c)

the relationships of the parties, including the validity, scope and enforceability of this Arbitration Provision . . . shall be resolved . . . by binding arbitration.

Loan application, para. 11.[4]

**Issues**

¶ 11 The trial court determined that despite the broad language of the arbitration clause, that provision applied only to the loan transaction itself and not to any other service Block may have provided. The trial court concluded that the electronic fee charged for filing the tax form was a separate and distinct transaction from the application for a loan, and thus was not covered by the arbitration provision. The trial court pointed out that filing a tax return does not obligate one to obtain a loan; the administrative or processing charges incurred in filing a tax return will be incurred independent from any other transaction a customer may have with Household. Additionally, we note there is no indication at all in the record that Household in any way benefits from the e-filing fee or has any input as to the fee in any way.

¶ 12 In essence, the trial court found that charging a fee to push the "send" button (basically the equivalent of putting a stamp on an envelope) was too attenuated to the loan application process and so was exempt from the arbitration clause.

▮ ¶ 13 Block claims error in this determination for a number of reasons. First, it claims once the existence of an executed arbitration clause is established, that the arbitration clause clearly states

---

3. The RAL application, as noted, refers to Block as either the tax preparer **or** filer. Thus it appears that Block need not have actually prepared the tax return to apply for a loan.

4. The various loan applications all contain similar language in the arbitration clause. No one disputes to this point. The arbitration clause appears in different paragraph numbers in the different applications. The language specifically cited herein is from Brian Erzar's RAL application.

that virtually any dispute regarding the arbitration provision must be arbitrated. There is certainly no doubt that plaintiffs executed RAL applications, all of which contain the arbitration provision. Thus, Block contends, all other considerations must be determined by a panel of arbitrators.

¶ 14 Block bases this argument at least partially on the Federal Arbitration Act (FAA), 9 U.S.C. §§ 1–16, which governs arbitration provisions that involve interstate commerce. Specifically, the FAA states:

> [a] written provision in any maritime transaction or contract involving interstate commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract or transaction or refusal, shall be valid and irrevocable, and enforceable, save upon grounds as exist as law or in equity for the revocation of any contract.

9 U.S.C. § 2. The FAA represents a declaration of a liberal federal policy favoring arbitration, and so any doubts regarding the scope of arbitral issues should be resolved in favor of arbitration. *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

¶ 15 In essence, Block contends the combination of the expansive language of the arbitration provision—any disputes regarding the relationships of the parties, past, present or future is subject to arbitration—and the liberal policy favoring arbitration required the trial court to grant the transfer to arbitration once the existence of the provision was established. We believe that Block's interpretation is too broad.

¶ 16 First, as a matter of practicality, Block's interpretation would produce absurd and inequitable results. Imagine a situation where a customer goes to Block and has his taxes prepared. While on Block's premises as a business invitee, he falls due to the negligence of Block and breaks his arm. The next year the same customer returns to Block to have his taxes prepared and additionally to obtain an RAL. He signs the RAL application with Household that contains the arbitration provision. He then files a court action to recover damages for the injuries he suffered when he fell and broke his arm. Because the personal injury occurred as a business invitee this could arguably involve the "relationship" between Block and the customer. Block would have it that this personal injury action, completely divorced from the loan application, would nonetheless be subject to arbitration. This is an absurd result. Clearly no reasonable consumer has contemplated, when applying for a loan, the application of an arbitration provision to a personal injury accident that occurred one year prior to the execution of the arbitration clause.

¶ 17 It is therefore clear that the existence of an arbitration provision and a liberal policy favoring arbitration does not require the rubber stamping of all disputes as subject to arbitration. Pennsylvania policy regarding arbitration is consistent with United States Supreme Court rulings. *Lytle v. CitiFinancial Services, Inc.*, 810 A.2d 643, 653 (Pa.Super.2002). The FAA merely placed arbitration agreements on equal footing with other contracts.[5] *Id.*

---

5. Prior to the enactment of the FAA in 1925, an arbitration clause was revocable at will by either party.

■■■ ¶ 18 In Pennsylvania the issue of whether a particular dispute falls within a contractual arbitration provision is a matter of law for a court decide. *Huegel,* 796 A.2d at 354. To determine whether the claim is subject to arbitration the court engages in a two-prong analysis. First, does a valid agreement exist and second is the dispute within the scope of the agreement. *Keystone Technology Group, Inc. v. Kerr Group, Inc.,* 824 A.2d 1223, 1227 (Pa.Super.2003). The FAA specifically allows for the negation of an arbitration provision "upon grounds as exist at law or equity." Thus, generally accepted contract defenses such as duress, illegality, fraud or unconscionability are available to challenge the application of an arbitration provision. *Lytle,* 810 A.2d at 656. In analyzing the contract, we must take care to note the surrounding circumstances, the situation of the parties when the contract was made, and the objects they apparently had in view and the nature of the subject matter. *Huegel,* 796 A.2d at 354.

■■■ ¶ 19 While any doubts about the intent of parties or enforceability of the arbitration provision should be resolved in favor of arbitration, the existence of a controversy regarding some aspect of an arbitration provision does not equate to "doubt." If that were so, then any dispute over the applicability of an arbitration provision would automatically be resolved in favor of arbitration leaving the court only to decide whether an arbitration provision had been executed. Given the recitation of the case law above, it is clear that the court's role is greater than simply determining whether a contract has been signed.

¶ 20 The trial court examined the circumstances surrounding the RAL application and the tax preparation. It considered the fees charged and the purpose for the fees. The trial court recognized that a person is fully able to obtain tax preparation services, including electronic filing, without ever applying for an RAL. Thus, the e-filing fee in question will be incurred independently of the application for the RAL. The trial court considered the fact that Block is not an actual party to the RAL, even though it is mentioned in the application document. We note that the RAL application specifically denies Block's status as fiduciary or agent in terms of the RAL.

¶ 21 In examining the circumstances of the contract in question, the arbitration clause appears in the loan application, not the tax preparation contract. The language of the arbitration clause refers to the "documents," documents being defined as the RAL application, not any contract or document prepared by Block. The provision refers to any controversy arising from the relationships of the parties. As noted earlier, this does not and cannot refer to all conceivable relationships between the parties; rather, viewing the document as a whole, the intent appears to be the relationships of the parties as it applies to the loan. This interpretation is further supported by the fact that Block has no direct connection to the RAL application. There is no signature required from any Block representative for the contract to be consummated. By all appearances, Block need not have actually even prepared the tax forms in question. At most, Block is a third-party beneficiary solely to the arbitration clause of a loan application. It simply makes no sense to provide Block with independent rights to enforce the arbitration provision of a contract it is not a party to, concerning an issue not covered by the contract. The "relationship" between Block, the customer and Household does not extend to Block, on its own, charging a customer a fee for putting an electronic postage stamp on a tax return.

¶ 22 Given all of the above, we cannot say that Judge Corbett in any way abused her discretion in finding that the electronic filing fee was separate and distinct from the loan application and therefore not covered by the arbitration provision.

¶ 23 The above discussion fairly well disposes of the notion that the two transactions, the RAL application and the e-filing fee are "intermeshed" to the point of inseparability. To the above, we add a further comment. The argument made by Block ignores the reality that McNulty was charged an e-filing fee not only for the year she applied for a RAL, but for the prior year as well. Block offers no argument, nor can we perceive one, which would sufficiently explain how a fee charged one year before a loan request, regarding a transaction completely unconnected to the loan request, can in any way, shape or form be intermeshed with the loan request.

¶ 24 While we find no error in the trial court's ruling, we also note an alternative ground to affirm the denial of transfer to arbitration. Plaintiffs claimed that the arbitration clause was unconscionable and therefore unenforceable. The trial court noted its suspicions about the provision on unconscionability, but refrained from actually ruling on the issue. A complete review of the record, however, demonstrates that, as applied, this clause is unconscionable.

¶ 25 The FAA states that an arbitration provision may be challenged upon such grounds as exist at law or equity that may be used as a defense in any contract action. This allows for a challenge to the application of an arbitration provision based on such traditional grounds as duress, fraud, illegality and unconscionability.

These issues are a matter of law properly determined by the courts.

¶ 26 A determination of unconscionability requires a two-fold determination: 1) that the contractual terms are unreasonably favorable to the drafter, and 2) that there is no meaningful choice on the part of the other party regarding the acceptance of the provisions. *Lytle*, 810 A.2d at 658–59.

¶ 27 The contract in question is a classic example of an adhesion contract, which is a "form contract prepared by one party, to be signed by the other party in a weaker position, [usually] a consumer, who has little choice about the terms." *Id.* at 658. Thus, the second prong is met.[6]

¶ 28 Facially, the contractual terms do not appear to unreasonably favor either Block or Household. The provision does not reserve the right to trial solely to the drafter, a common reason for invalidating such a clause. Certainly, in many instances arbitrating a dispute involving a RAL would further the goals of saving all parties time and expense. However, as applied to the present factual scenario, it becomes apparent that the arbitration provision does unreasonably favor Block.

¶ 29 *Lytle* makes it clear that if the costs associated with arbitration of a single claim would operate to preclude a claimant from pursuing a remedy, then the enforcement of the provision would be unconscionable. *Id.* at 667–68. Here, the each single claim involves the imposition of a $34.00 to $37.00 fee. The arbitration clause states that the consumer is required to pay an initial $50.00 fee and then must pay any costs over the next $1,500.00. While we note that an arbitration hearing can often

---

6. It must be noted that simply because a dispute involves an adhesion contract, that contract is not automatically unconscionable. *Lytle* at 658. However, the determination that an adhesion contract is at issue, by definition fulfills the second prong of the unconscionability test.

cost well in excess of $1,550.00, we have no evidence of how long an arbitration of each single case here would take and so have no clear picture of the ultimate cost of a single arbitration. Nonetheless, even assuming no cost above the initial $50.00,[7] this arbitration clause requires a consumer to pay $50.00 in the hopes of receiving, at most $37.00. As Block points out in its brief, the IRS specifically allows for the imposition of some manner of fee for electronic. filing,[8] therefore it appears unreasonable to presume the customer would be entitled to a refund of the entire fee. Thus, in reality the consumer would be spending $50.00 for a return of something around $30.00. While there may be a select few who are so incensed by the notion of the e-filing fee they would spend significant time and $50.00 for the possibility of a $30.00 award, this is a situation where the costs of arbitration, minimal though they may seem, work to preclude the individual presentation of claims.

> Avoiding the public court system to save time and money is a laudable societal goal. But, avoiding the public court system in a way that effectively denies citizens access to resolving everyday societal disputes is unconscionable. Goals favoring arbitration of civil disputes must not be used to work oppression. When the goals given in support of contract clauses like this are used as a sword to strike down access to justice instead of a shield against prohibitive costs, we must defer to the overriding principle of access to justice.

*Lytle*, 810 A.2d at 667–68 (*quoting Mendez v. Palm Harbor Homes, Inc.*, 111 Wash. App. 446, 45 P.3d 594 (2002)).

---

7. This assumption necessarily presumes no cost for legal representation.

8. IRS Publication 1345, handbook for Authorized IRS E–File Providers of Individual Income Tax Returns.

¶ 30 As applied to facts of this case, the enforcement of the arbitration provision would work to deny the allegedly injured parties access to justice and is therefore unconscionable.[9] We believe that this determination of unconscionability satisfies the FAA in that it represents grounds in both law and equity for the defeat of the arbitration provision.

¶ 31 For the foregoing reasons, order affirmed.

---

9. We wish to reinforce the fact that the unconscionability of this arbitration provision is only in reference to the present factual situation.