# Christy v. Fricke

192

*Gary G. Krafft,* for plaintiff.

*Megan R. Ford* and *Christopher W. Mattson,* for defendants.

CULLEN, *J.,* November 20, 2008—Pending before the court are the motion for summary judgment filed by defendants, James E. Fricke and Hawk Valley Inc., and plaintiffs' motion for partial summary judgment. For the reasons set forth below, defendants' motion will be granted. Plaintiffs' motion will be denied.

## PROCEDURAL AND FACTUAL HISTORY

This case has had a tortured procedural history. Fortunately, not all of the numerous filings are pertinent to the issues now before the court.

This action was initiated by the filing of a complaint by four individuals on February 23, 2006.[1] A subsequent petition to amend the complaint was filed and eventually the individuals identified in the current caption became the named plaintiffs.[2]

---

1. The four original plaintiffs were Robert Christy, Leroy Klein, Richard Moller and Donald Robbins.

2. On April 1, 2008, defendants filed a separate motion for summary judgment and supporting brief with respect to the claims of Irene

On March 29, 2006, a second amended complaint was filed to which defendants, James E. Fricke and Hawk Valley Inc., filed preliminary objections leading to the filing of a third amended complaint on December 28, 2006. Apparently unaware of the filing of the third amended complaint, defendants filed a motion for summary judgment on December 29, 2006.

Plaintiffs filed a motion for partial summary judgment on January 2, 2007. In an apparent attempt to escape the procedural thicket which had grown up, the court held oral argument on a variety of matters. By order of March 7, 2007, the court denied both the motion for summary judgment and the motion for partial summary judgment. In response to plaintiffs' request for leave to amend their pleading, on March 21, 2007, the court ordered that the third amended complaint be deemed filed with leave and directed defendants to respond. An answer with new matter and a reply to new matter were filed and the pleadings finally closed.

On August 30, 2007, this case was reassigned to the undersigned due to the illness and unavailability of the Honorable Paul K. Allison. Unfortunately, plaintiffs' counsel was also severely ill and an additional delay was encountered in securing replacement counsel.

The court held a conference with plaintiffs' new counsel and defendants' counsel, and agreed to reconsider the

---

Lockner. In lieu of a response, a praecipe to discontinue the action without prejudice was filed on Ms. Lockner's behalf on April 25, 2008. Defendants filed a petition to strike the praecipe on April 30, 2008. Because of the court's disposition of Ms. Lockner's claim, no specific reference will be made to her in this opinion.

previously denied motion for summary judgment and motion for partial summary judgment. Thereafter, a joint motion for reconsideration was filed on April 8, 2008.

This case arises out of defendants' plan to develop the Hawk Valley Golf Course into residential lots. Plaintiffs are owners of condominiums in one of two residential subdivisions, "Hawk Valley Village" and "The Greens at Hawk Valley," which abut the golf course. Plaintiffs object to the development of the golf course and argue that when they purchased their properties, they were assured the golf course would remain as a golf course. Plaintiffs seek to have the golf course remain as is and a determination that defendants do not have the right to convert it into residential lots.

## DISCUSSION

Pennsylvania Rule of Civil Procedure 1035.2 provides in relevant part: "[a]fter the relevant pleadings are closed . . . any party may move for summary judgment in whole or in part as a matter of law (1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or (2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury." Pa.R.C.P. 1035.2.

A grant of summary judgment is proper where the evidentiary record either "(1) shows the material facts are undisputed or (2) contains insufficient evidence of facts to make out a prima facie cause of action or defense and, therefore, there is no issue to be submitted to the jury." *McCarthy v. Dan Lepore & Sons Co. Inc.,* 724 A.2d 938, 940 (Pa. Super. 1998). Thus, "[i]f the non-moving party fails to come forward with sufficient evidence to establish or contest a material issue to the case, the moving party is entitled to judgment as a matter of law." *Id.* (citing *Ertel v. Patriot-News Co.,* 544 Pa. 93, 100-102, 674 A.2d 1038, 1042 (1996), *cert. denied,* 519 U.S. 1008, 117 S.Ct. 512, 136 L.Ed.2d 401 (1996)).

"A material fact is one that directly affects the outcome of the case." *Gerrow v. Shincor Silicones Inc.,* 756 A.2d 697, 700 (Pa. Super. 2000).

A court must view the record "in the light most favorable to the non-moving party, and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party." *Pennsylvania State University v. County of Centre,* 532 Pa. 142, 145, 615 A.2d 303, 304 (1992).

The purpose of the summary judgment procedure is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Phaff v. Gerner,* 451 Pa. 146, 151, 303 A.2d 826, 829 (1973). The court "must ignore controverted facts appearing only in the pleadings" and restrict its consideration to material "filed in support of and in opposition to the motion for summary judgment" and the "uncontroverted" allegations of the pleadings. *Id.* at 151-52, 303 A.2d at 830;

*Washington Federal Savings & Loan Association v. Stein,*
357 Pa. Super. 286, 289, 515 A.2d 980, 981 (1986).

In opposing a motion for summary judgment and putting forth his or her evidence, the non-moving party cannot rest on the allegations or denials in the pleadings. *Rapagnani v. Judas Co.,* 736 A.2d 666, 668 (Pa. Super. 1999). "Rather, the adverse party must identify evidence in the record establishing the facts essential to the cause of action or defense which the motion cites as not having been produced." *Id.* at 668-69.

Both of the pending motions were filed before the court granted leave to file the third amended complaint, and while preliminary objections to the second amended complaint were still pending. The court has reviewed both the second and third amended complaints and finds that the few differences between them do not affect the positions of the parties as expressed in their motions and briefs. Therefore, to move the matter forward, the court will treat the pending motions as if filed after the pleadings closed as this was clearly the intent of the parties when they filed the joint motion for reconsideration.[3]

---

3. The parties presented no evidence with respect to plaintiffs Robert and June Beers in connection with plaintiffs' motion for partial summary judgment and defendants' motion for summary judgment. Defendants state in their memorandum of law in support of their motion for summary judgment that plaintiffs Robert and June Beers did not participate in discovery, failed to respond to requests for production and interrogatories that were served upon them, and failed to appear for their depositions because they were in Florida. Since both plaintiffs and defendants are willing to proceed as evidenced by their joint motion for reconsideration, the court concludes that plaintiffs and defendants are satisfied with the record as it currently exists. Neither party has sought to have the disposition of the pending motions delayed to

In their motion, defendants argue that plaintiffs' claims should be dismissed because they are barred by the doctrine of merger, the parol evidence rule, and the statute of frauds. (Def. mem. of l., def. mot. s.j. at 27-28, 38-39.) Defendants also argue that even if the court finds that Counts V through VII have merit, they should be dismissed as time-barred. *(Id.* at 40-46.)

Although defendants advance numerous theories (*e.g.,* the doctrine of merger, statute of frauds and the parol evidence rule) to support their assertion that plaintiffs' claims should be dismissed, an analysis of the parol evidence rule is dispositive.

The underlying facts can be summarized as follows.

Plaintiffs are purchasers of condominiums located in either the Hawk Valley Village (The Village) or The Greens at Hawk Valley (The Greens). The homes were purchased between the years 1989 and 1994. Plaintiffs contend that at the time of purchase, they were assured that the existing golf course would be available for their use and enjoyment forever. Plaintiffs assert they were

conduct further discovery. Moreover, there is no suggestion that plaintiffs Robert and June Beers have evidence different than what has already been presented. Although defendants are the moving party and have the burden of demonstrating that there is no genuine issue of material fact as to plaintiffs' claims, defendants have met that burden by setting forth evidence with respect to the existing claims. Once this has been done, it is plaintiffs Robert and June Beers' burden to present evidence to create a genuine issue of material fact. As they have not provided any evidence, the court must proceed and treat their allegations the same as the allegations of the other plaintiffs. Consequently, even though each of the other plaintiffs' agreement of sale is included in defendants' exhibit 6, plaintiffs Robert and June Beers' agreement of sale is missing from the exhibit.

led to this belief by numerous representations, both oral and printed. These representations are stated as follows:

"(12) All plaintiffs purchased homes in the development sections 'The Village at Hawk Valley' and 'The Greens at Hawk Valley' between 1989 and 1995. At the time of the purchase, plaintiffs were assured and induced by representations by defendants and/or their agents and/or affiliates to purchase their homes and that the existing golf course would be available for their use and enjoyment forever. (Copies of the representative examples are attached hereto as exhibit 'B' collectively.) All plaintiffs were induced to believe this fact by the following representations among others:

"(a) The titles, cover and contents of the selling brochures and advertisements, which featured the community as a golf course community, depicting the homes and the golf course as a single unit;

"(b) Authorized or apparently authorized verbal representations made directly to plaintiffs that the plaintiffs would be purchasing a home in a golf course community, with access to the golf course and associated amenities;

"(c) The fact that the residential-golf course community included construction of golf cart paths and parking shelters spread throughout and integrated with the residential community; and connecting to the golf course; with rights granted plaintiffs for the use of golf cart travel to, from, and on the golf course.

"(d) Verbal representations, descriptions and contract forms as to the availability and benefits of the golf course

by defendants Fricke and/or defendants' sales agents, demanding premium prices for properties with views of the golf course.

"(e) Plot plans showing easements to be granted by residential communities, the Village at Hawk Valley and the Greens at Hawk Valley, to Hawk Valley Inc. for the sole purpose of operating and maintaining the golf course;

"(f) Various sales inducements in the way of offers of golf carts for personal use, special golf packages and other incentives to play golf at Hawk Valley golf (sic) Course;

"(g) Representations that the golf course would be available for the use of all home buyers in The Village at Hawk Valley and The Greens at Hawk Valley.

"(h) Plaintiffs and other potential buyers and owners (who communicated to plaintiffs, as intended by defendants), were shown plans which included representations of dispersed golf cart shelters and golf cart paths for access and traversing the golf course. Advertisements presented that Hawk Valley Inc. offered a golf cart for the homeowner's own personal use." (Pl. 3d am. compl., ¶12.)

Plaintiffs maintain that they were fraudulently induced to purchase their properties by the advertisements and sales brochures and statements made by defendants' representatives. For example, plaintiffs allege that defendant Fricke represented to plaintiff Robbins that the golf course would remain permanently (Def. mem. of l., def. mot. s.j. ex. 8 at 19-20) and defendants' agent,

Jackie Zaephel, made statements that the golf course would remain into perpetuity (See, *e.g.,* def. mem. of l., def. mot. s.j. ex. 9, ¶¶5-9.) Moreover, plaintiffs claim that the brochures and advertisements held out the community as a golf course community and emphasized the relationship between the condominiums and the golf course. (See pl. ex. A-G.)

For purposes of summary judgment, defendants do not challenge plaintiffs' assertions that statements were made by defendants or their agents during the sales phase prior to plaintiffs' purchases. Defendants argue that the statements were truthful depictions of the condominium property and the golf course as they then existed.

Defendants assert that plaintiffs were provided written notice that the golf course may not remain permanently. Defendants contend that when plaintiffs signed their respective agreement of sale, each plaintiff acknowledged they were provided with a copy of the public offering statement. Further, prior to closing, each plaintiff was provided with the declaration of condominium for their respective subdivision. Both the declaration and the public offering statement, for The Greens and The Village respectively, contain clear and unambiguous language to the effect that plaintiffs are not guaranteed future use of the golf course.

The public offering statement for The Village provides:

**"THE GOLF COURSE IS A SEPARATELY OWNED AND OPERATED PROPERTY AND IS NOT PART OF THE PROPERTY OF THE CON-**

DOMINIUM. THE DECLARANT MAKES NO REPRESENTATIONS REGARDING THE FUTURE USE OR USES OF THE GOLF COURSE BY DECLARANT OR ANY SUCCESSOR OWNER. NEITHER THE ASSOCIATION, ANY UNIT OWNER, NOR ANY OTHER PERSON GAINS ANY PROPERTY RIGHT, OWNERSHIP INTEREST OR OTHER RIGHT, TITLE OR INTEREST IN THE GOLF COURSE, NOR ANY RIGHT TO USE OR GAIN MEMBERSHIP IN THE GOLF COURSE BY VIRTUE OF OWNERSHIP OF A UNIT, OR OTHERWISE AS AN INCIDENT OR APPURTENANCE OF THE CONDOMINIUM." (See def. mem. of l., def. mot. s.j. ex. 4 at 4.) (emphasis in original)

Further, the public offering statement also provides that "Upon recordation of the declaration, the condominium will be subject to the terms of the declaration, as recorded . . . ." (*Id.* at 12.) The Village declaration states:

"Section 13.5. <u>Adjoining Golf Course</u>. THE DECLARANT IS THE PRESENT OWNER OF THE GOLF COURSE WHICH ADJOINS THE NORTHERN LINE OF THE PROPERTY. THE GOLF COURSE IS A SEPARATELY OWNED AND OPERATED PROPERTY AND IS NOT PART OF THE PROPERTY OR OF THE CONDOMINIUM. THE DECLARANT MAKES NO REPRESENTATIONS REGARDING THE FUTURE USE OR USES OF THE GOLF COURSE BY DECLARANT OR ANY SUCCESSOR OWNER. NEITHER THE ASSOCIATION, ANY UNIT OWNER, NOR ANY OTHER PERSON, GAINS ANY PROP-

ERTY RIGHT, OWNERSHIP INTEREST OR OTHER RIGHT, TITLE OR INTEREST IN THE GOLF COURSE, NOR ANY RIGHT TO USE OR GAIN MEMBERSHIP IN THE GOLF COURSE BY VIRTUE OF OWNERSHIP OF A UNIT, OR OTHERWISE AS AN INCIDENT OR APPURTENANCE OF THIS CONDOMINIUM." (See *id.* at 21.) (emphasis in original)

With respect to The Greens, the Public Offering Statement provides that "the golf course located north of Hawk Valley Village is a separately owned and operated property, and unit owners have no ownership interest or rights to use the golf course merely by virtue of owning a unit within the condominium." (See def. mem. of l., def. mot. s.j. ex. 5 at 3-4.) Also included is a conspicuous paragraph which states:

"ANY INFORMATION OR DATA REGARDING THE CONDOMINIUM NOT INCLUDED IN THIS PUBLIC OFFERING STATEMENT MUST NOT BE RELIED UPON. NO PERSON HAS BEEN AUTHORIZED BY THE DECLARANT TO MAKE ANY REPRESENTATION OR WARRANTY NOT EXPRESSLY CONTAINED HEREIN, AND NOTHING IN THIS PUBLIC OFFERING STATEMENT MAY BE CHANGED OR MODIFIED ORALLY." *(Id.* at 18.) (emphasis in original)

Like the public offering statement for The Village, the public offering statement for The Greens provides that "The condominium is subject to the terms of the declaration . . . ." *(Id.* at 12.) The Greens declaration provides,

"Section 24.5. Adjoining Golf Course. HAWK VALLEY INC. IS THE PRESENT OWNER OF THE GOLF COURSE WHICH ADJOINS THE PROPERTY. THE GOLD [sic] COURSE IS A SEPARATELY OWNED AND OPERATED PROPERTY AND IS NOT PARTY [sic] OF THE PROPERTY OR OF THE CONDOMINIUM. HAWK VALLEY INC. MAKES NO REPRESENTATIONS REGARDING THE FUTURE USE OR USES OF THE GOLF COURSE BY HAWK VALLEY INC. OR ANY SUCCESSOR OWNER. NEITHER THE ASSOCIATION, ANY UNIT OWNER, NOR ANY OTHER PERSON GAINS ANY PROPERTY RIGHT, OWNERSHIP INTEREST OR OTHER RIGHT, TITLE OR INTEREST IN THE GOLF COURSE, NOR ANY RIGHT TO USE OR GAIN MEMBERSHIP IN THE GOLF COURSE BY VIRTUE OF OWNERSHIP OF A UNIT, OR OTHERWISE AS AN INCIDENT OR APPURTENANCE OF THIS CONDOMINIUM." *(Id.* at 44-45.) (emphasis in original)

Plaintiffs acknowledged in their deeds that they purchased the property subject to the applicable declaration of condominium, and they acknowledged receipt of the public offering statement in their respective agreement of sale. (See collectively def. mem. of l., def. mot. s.j. ex. 1 and 6.)

The fundamental allegations underlying plaintiffs' claims for fraud (Count V) and violations of the Unfair Trade Practices and Consumer Protection Law (UTP-CPL)[4] (Count VII) are the same; that is, the pre-purchase

---

4. 73 P.S. §201-1 et seq.

representations made by defendants and their representatives induced plaintiffs to purchase their properties based on the belief that the golf course would exist forever. (See pl. 3d am. compl., ¶¶33-34, 44-48.)

As noted above, the public offering statement for both The Greens and The Village specifically provides that the golf course is a separately owned property and that defendant was not making any representations regarding the future uses of the golf course by defendant or any subsequent owners. (See def. mem. of l., def. mot. s.j. exs. 4 and 5.)

Plaintiffs seek to prove their claims by the introduction of statements made prior to the purchase of their condominiums, as well as advertisements. The parol evidence rule, however, bars the introduction of evidence to vary or modify the terms of an integrated contract. *Yocca v. Pittsburgh Steelers Sports Inc.,* 578 Pa. 479, 497, 854 A.2d 425, 436 (2004). The Pennsylvania Supreme Court has explained the parol evidence rule as follows:

"Where the parties, without any fraud or mistake, have deliberately put their engagements in writing, the law declares the writing to be not only the best, but the only, evidence of their agreement. All preliminary negotiations, conversations and verbal agreements are merged in and superseded by the subsequent written contract . . . and unless fraud, accident or mistake be averred, the writing constitutes the agreement between the parties, and its terms and agreements cannot be added to nor subtracted from by parol evidence." *Id.* (citation omitted)

Thus, for the parol evidence rule to apply, there must be a writing that represents the "entire contract between parties." *Id.* (citing *Gianni v. Russell & Co.,* 281 Pa. 320, 323, 126 A. 791, 792 (1924)). To determine whether a writing is the parties' entire contract, the writing must be looked at and "if it appears to be a contract complete within itself, couched in such terms as import a complete legal obligation without any uncertainty as to the object or extent of the (parties') engagement it is conclusively presumed that (the writing represents) the whole engagement of the parties . . . ." *Id.* (citation omitted) "An integration clause which states that a writing is meant to represent the parties' entire agreement is also a clear sign that the writing is meant to be just that and thereby expresses all of the parties' negotiations, conversations, and agreements made prior to its execution." *Id.* (citation omitted)

Further "parol evidence of prior representations is inadmissible as to matters covered by the written agreement with an integration clause, unless the parties agreed that those representations would be added to the written agreement but they were omitted because of fraud, accident, or mistake." *Glassmere Fuel Service Inc. v. Clear,* 900 A.2d 398, 402 (Pa. Super. 2006). (citation omitted)

The situation described above is commonly referred to as "fraud in the execution" since the party proffering the evidence contends that he executed the agreement because he was defrauded by being led to believe that the document contained terms that actually were omitted from it. This is not the case here. In this action, plaintiffs allege they were induced to purchase their

homes because of statements and representations made *prior* to the purchase. Plaintiffs specifically state in their complaint that "[a]t the time of the purchase, plaintiffs were assured and induced by representations by defendant and/or their agents and/or affiliates to purchase their homes and that the existing golf course would be available for their use and enjoyment forever." (Pl. 3d am. compl., ¶12.) Further, plaintiffs allege that they "were induced to purchase by advertisements and sales brochures and statements . . . ." *(Id.* at ¶14.) Plaintiffs argue that they justifiably relied on the statements and advertisements and would not have purchased their units but for the representations made. (See *id.* at ¶¶12-13.)

The courts, however, have refused to permit the introduction of parol evidence where a plaintiff alleges he was fraudulently induced to enter into a contract. See generally, *Yocca v. Pittsburgh Steelers Sports Inc.,* 578 Pa. 479, 854 A.2d 425 (2004). "[W]hile parol evidence may be introduced based on a party's claim that there was a fraud in the execution of a contract, *i.e.,* that a term was fraudulently omitted from the contract, parol evidence may not be admitted based on a claim that there was fraud in the inducement of the contract, *i.e.,* that an opposing party made false representations that induced the complaining party to agree to the contract." *Id.* at 498 n.26, 854 A.2d at 437 n.26 (citation omitted); see also, *HCB Contractors v. Liberty Place Hotel Associates,* 539 Pa. 395, 652 A.2d 1278 (1995) (stating that admitting parol evidence in claims for "fraud in the inducement" would make a mockery out of parol evidence rule).

Plaintiffs entered into an agreement of sale for their respective condominiums. The agreement of sale contained a merger clause[5] which specifically provided:

"Scope of Authority; Merger.

"(a) This agreement supersedes any and all prior understandings and agreements between the parties and constitutes the entire agreement between them. No representations, warranties, conditions, or statements, oral or written, including any promotional material regarding the condominium, not contained herein shall be considered a part of the contract between the parties hereto. This agreement may not be amended, altered, modified or discharged except by an instrument in writing signed by the party sought to be charged therewith.

"(b) No salesperson, employee or agent of seller has any authority whatsoever to make any representation or

---

5. Plaintiffs attempt to argue that the merger clause is not enforceable because the agreement of sale is a contract of adhesion and is unconscionable. A contract of adhesion is "a form contract prepared by one party, to be signed by the other party in a weaker position, usually a consumer, who has little choice about the terms." *McNulty v. H & R Block Inc.*, 843 A.2d 1267, 1273 (Pa. Super. 2004). However, the evidence in this case does not support the claim that the agreement of sale is an adhesion contract. The agreement of sale here was not one which was drafted to take advantage of the plaintiffs' "weaker" position. In fact, the plaintiffs were not in a weaker position as each had the option and ability to not enter into the transaction in the first place and to purchase a residence elsewhere. Moreover, not all adhesion contracts are unconscionable. *Id.* Unfortunately, plaintiffs have failed to fully develop their argument, merely stating that they were denied the opportunity to negotiate the agreement of sale because the condominium documents were registered and were 140 pages long. Without a more developed argument or evidence in support of their claims, plaintiffs' claim that the contract is unconscionable is without merit.

agreement not contained in this agreement, and only those contained herein shall be binding upon seller. Purchaser acknowledges that any information received by it from seller or seller's officers, agents or employees relating to carrying costs, tax benefits of ownership, or otherwise was offered as an estimate only, and purchaser declares that purchaser did not rely thereon in entering into this agreement." (See def. mem. of l., def. mot. s.j. ex. 6, The Greens agreement of sale, ¶21, The Village agreement of sale, ¶13.)

Because the same merger clause was included in both The Greens agreement of sale and The Village agreement of sale, the court finds that the agreement explicitly stated that it represented the parties' entire contract regarding the sale of the condominium. Accordingly, the parol evidence rule bars the admission of any evidence of prior oral or written negotiations, representations, or agreements entered into between the parties concerning the sale of the condominium, such as discussions and advertisements regarding the golf course, to explain or vary those terms expressed in the agreement of sale.

Plaintiffs' fraud claims are based entirely on allegations that defendants made and breached representations that the golf course would be available for plaintiffs' use and enjoyment forever. (Pl. 3d Am. Compl., ¶¶11-12.) Because those representations are not, in fact, part of the agreement of sale, and in light of *Yocca, HCB Contractors* and their progeny, plaintiffs have failed to demonstrate the existence of a genuine issue of material fact with regard to their claims of fraud.

Likewise, the court finds that plaintiffs have failed to present a genuine issue of material fact with respect to their claims under the Unfair Trade Practices and Consumer Protection Law (UTPCPL), 73 Pa.C.S. §201-1 et seq. "The general purpose of the UTPCPL is to protect the public from fraud and unfair or deceptive business practices." *Neal v. Bavarian Motors Inc.,* 882 A.2d 1022, 1029 (Pa. Super. 2005). "The UTPCPL's underlying foundation is fraud prevention." *Weinburg v. Sun Co. Inc.,* 565 Pa. Super. 612, 618, 777 A.2d 442, 446 (2001).

To bring a private cause of action under the UTPCPL, a plaintiff must show that he justifiably relied on the defendant's wrongful conduct or representation and that he suffered harm as a result of that reliance.[6] See *Toy v. Metropolitan Life Insurance Co.,* 593 Pa. 20, 46, 928 A.2d 186, 202 (2007) (holding "plaintiff alleging violations of the [UTPCPL] must prove the common-law fraud element of justifiable reliance"); *Yocca,* 578 Pa. at 500,

---

6. *Toy* differentiated between "reliance" and "justifiable reliance" by stating that "justifiable reliance" is typically a fact for the fact-finder to decide and requires consideration of parties, their relationship, and circumstances surrounding the transaction, including whether representations were superseded by a fully-integrated, signed, written agreement in which those representations were expressly disclaimed and that "reliance" only requires the plaintiff establish nothing more than a causal connection between the plaintiff's loss and the defendant's unlawful behavior. *Toy,* 593 Pa. at 54-55, 928 A.2d at 208. The Supreme Court in *Toy* made clear that "justifiable reliance" only becomes a fact for the fact-finder to decide when "fraud in the execution" is alleged. *Id.* When only "fraud in the inducement" is alleged, as here, the court's analysis with respect to plaintiffs' UTPCPL claim and the element of "justifiable reliance" is appropriate. *Id.* at 46-55, 928 A.2d at 203-208.

854 A.2d at 438. Plaintiffs' claims are premised on the representations made by defendants before the parties entered into an agreement of sale. According to plaintiffs, they are entitled to relief because they justifiably relied on these representations in deciding to purchase their respective condominiums and that they suffered damage as a result of that reliance.

Because the Commonwealth has adopted the parol evidence rule, plaintiffs cannot be said to have justifiably relied on any representations made by defendants before the parties entered into the agreement of sale. See *Yocca,* 578 Pa. at 502, 854 A.2d at 439. By signing the agreement of sale, which contained a merger clause stating that the terms of the agreement of sale superseded all of the parties' previous representations and agreements, plaintiffs explicitly disclaimed reliance on any such representations. See *id.* (citing *Blumenstock v. Gibson,* 811 A.2d 1029, 1035-36 (Pa. Super. 2002) (quoting "a party cannot justifiably rely upon prior oral representations yet sign a contract denying the existence of those representations")); *Sunquest Information Systems Inc. v. Dean Witter Reynolds Inc.,* 40 F. Supp.2d 644, 654 (W.D. Pa. 1999) ("As a matter of basic logic, [plaintiff] cannot be said to have relied upon representations specifically excluded by the [merger] clause."). Accordingly, as any reliance on representations preceding the agreement of sale was not justifiable, plaintiffs' allegations cannot establish that they are entitled to relief under the UTP-CPL.

Plaintiffs also assert defendants violated the Uniform Condominium Act, 68 Pa.C.S. §3402 (Count VI), by

failing to act in good faith in the execution and/or performance of the sales contracts pursuant to section 3412. (Pl. 3d am. compl., ¶42.) Specifically, plaintiffs allege defendants violated section 3402 for failing to include in the public offering statement a statement regarding the possible termination of the golf course and further allege that "no description [contained in the public offering statement] would be full or accurate without disclosure of any alleged right to wholly terminate its existence." (*Id.* at ¶38.). Plaintiffs also state that the public offering statements that were provided wholly omitted, inter alia, any reference to any possible termination of the golf course and failed to advise plaintiffs that the golf course might not be retained in perpetuity. (*Id.* at ¶40.)

While plaintiffs posit, in their complaint, that the public offering statement does not disclose this information, the evidence is to the contrary, as quoted extensively above. The public offering statements state clearly and unambiguously that the golf course is a separately owned and operated property and that defendant was not making any representation regarding the future use of the golf course. (See def. mem. of l., def. mot. for s.j., exs. 2 and 3 (declarations) and exs. 4 and 5 (public offering statements).) Each public offering statement contained paragraphs that summarized the pertinent sections regarding the golf course as stated in the declaration. (Def. mem. of l., def. mot. for s.j., ex. 4 at 8, ex. 5 at 29.) The public offering statements also attached certain important documents, including the declaration, and the plats and plans of the respective condominiums. (Def. mem. of l.,

def. mot. for s.j., exs. 4 and 5.) These plats and plans do not depict the golf course in any manner, further illustrating that plaintiffs had no claim to the golf course when they purchased their properties. (Def. mem. of 1, def. mot. for s.j., ex. 4 at part II, ex. 5 at part II.) These exhibits were clearly tabbed and referenced in the table of contents of the public offering statements for both The Greens and The Village. (Def. mem. of 1., def. mot. for s.j., ex. 4 at ii, ex. 5 at table of contents.)

Lastly, plaintiffs complain that "defendants did not provide a public offering statement 15 days prior to an agreement." (Pl. 3d am. compl., ¶42.) Defendants are not required to provide a public offering statement 15 days prior to an agreement. 68 Pa.C.S. §3402(a)(12) states in pertinent part:

"*Section 3402. Public offering statement; general provisions*

"*(a) General Rule.*—[A] public offering statement must contain or fully and accurately disclose: . . .

"(12) A statement in at least 10-point bold face type, appearing on the first page of the public offering statement, as follows:

"(i) That within 15 days after receipt of a public offering statement, . . . the purchaser, before conveyance, may cancel any contract for purchase of a unit from a declarant.

"(ii) That if a declarant fails to provide a public offering statement . . . to a purchaser before conveying a unit, that purchaser may recover from the declarant damages

as provided in section 3406(c) (relating to purchaser's right to cancel).

"(iii) A description of such damages.

"(iv) That if a purchaser receives the public offering statement more than 15 days before signing a contract, he cannot cancel the contract . . . ." 68 Pa.C.S. §3402(a)(12).

In short, defendants must only give plaintiffs 15 days from the date plaintiffs receive the public offering statement within which to cancel the agreement of sale. Here, there is no dispute that defendants have complied with section 3402(a)(12). (See def. mem. of l., def. mot. s.j. exs. 4 and 5 (displaying language in compliance with section 3402(a)(12)).) Each of the plaintiffs executed an agreement of sale that contained a paragraph acknowledging receipt of the corresponding public offering statement prior to signing the agreement of sale. (See def. mem. of l., def. mot. s.j. ex. 6, ¶5 of each agreement of sale.) There is no indication that plaintiffs sought to cancel the transaction within the specified time period after receiving the public offering statements. Accordingly, the court finds that there is no cause of action as a matter of law.

For the reasons set forth above, the court finds that plaintiffs have failed to identify evidence in the record establishing the facts essential to their causes of action. While plaintiffs may have been told, prior to the time of the purchase of their condominiums, that it was a golf course community, there is no evidence that information was untrue at the time the statements were made. How-

ever, the public offering statements and declarations clearly reflected that the golf course may not remain in perpetuity. Therefore, plaintiffs' claims fail and defendants are entitled to judgment as a matter of law.[7]

With respect to plaintiffs' motion for partial summary judgment, for the same reasons set forth above, the court finds that plaintiffs have failed to set forth a cause of action for claims arising under the UCA (Count VI) and the UTPCPL (Count VII).

The public offering statement and declaration for The Village and The Greens, respectively, contain provisions stating that the golf course is a separately owned and operated property and not a part of the condominium. Moreover, these provisions are not deceptive or designed to cause confusion. These provisions were conspicuous, clear, and unambiguous. They were neither "buried" or drafted in "opaque language". Rather, they were drafted in a manner to alert the reader of the importance of its contents by, for example, using all capital letters, a bold type-face, and clearly underlined section headings (*e.g.*, "Adjoining Golf Course"). Accordingly, because plaintiffs have failed to set forth a cause of action for claims arising under the UCA and UTPCPL, plaintiffs' motion for partial summary judgment will be denied.

---

7. Because the court finds in favor of defendants and against plaintiffs, plaintiffs are not entitled to the remedies of specific performance (Counts II and III) and implied or resulting trust (Count IV) as plaintiffs have failed to demonstrate the existence of a valid cause of action which would warrant such relief. Plaintiffs are not entitled to a declaratory judgment (Count I) because plaintiffs have not established that a valid claim exists.

## ORDER

And now, November 20, 2008, the motion for summary judgment filed by defendants, James E. Fricke and Hawk Valley Inc., is granted.

Plaintiffs' motion for partial summary judgment is denied.