**Weidner v. McCann School of Business, Inc.**

*Heather E. Verchick*, for plaintiff.
*Kenneth M. Argentieri*, for defendants.

HESS, *J.*, March 12, 2014—

OPINION and ORDER

Before the court are the preliminary objections and petition to compel arbitration of defendants McCann Education Centers, Inc.[1] (hereinafter "McCann") and Delta Career Education Corporation (hereinafter "Delta") filed in response to an amended complaint filed by plaintiff Kelsi Weidner. (Prelim. objections and pet. to compel indv. arbitration, filed Oct. 1, 2013). Plaintiff's amended class action complaint contains three counts: at Count I, a claim for breach of contract; at Count II, a claim for violation of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1, et. seq.; and at Count III, a claim for violation of the Federal Racketeer Influenced

---

1. Plaintiff and defendants have acknowledged that McCann Education Centers, Inc. has been incorrectly identified as McCann School of Business, Inc. in the original complaint and subsequent captions.

and Corrupt Organizations Act, 18 U.S.C. §1962(C), (D). (Am. class action compl., filed Sept. 11, 2013). The defendants have preliminarily objected to the amended class action complaint, have requested that the plaintiff be ordered to arbitrate all disputes on an individual basis, and have requested that the present case be dismissed. (Prelim. objections and pet. to compel indv. arbitration, filed Oct. 1, 2013).

Plaintiff's amended complaint may be summarized as follows: plaintiff, Kelsi Weidner, is an adult individual using her attorney's place of business as her mailing address, 215 Pine Street, Suite 200, Harrisburg, PA 17101. (Am. class action compl., ¶ 1). McCann, a Pennsylvania corporation located at 346 York Road, Carlisle, PA 17013, is an education institution that offers classes and degrees to students in various fields of study. (Am. class action compl., ¶¶ 2, 5). McCann has several campuses across Pennsylvania where several different programs are offered, including lab tech and surgical tech programs. (Am. class action compl., ¶¶9, 10). Delta, a Virginia corporation with a mailing address of 4525 Columbia Street, Suite 101, Virginia Beach, Virginia 23462, owns and/or operates educational institutions that offer classes and degrees to students in various fields of study. (Am. class action compl., ¶¶3, 4). Plaintiff avers that McCann is one such educational institution affiliated with Delta. (Am. class action compl., ¶¶5, 6).

In December of 2011, plaintiff spoke with a representative of McCann about enrolling in their lab

tech program. (Am. class action compl., ¶ 22). Plaintiff avers that McCann's representative advised her that, after graduating from McCann, she would have to take a certification examination, which McCann would help her study for and take, and should then have no problem securing a job. (Am. class action compl., ¶¶ 23, 24). Plaintiff enrolled in the lab tech program in February of 2012. (Am. class action compl., 21). As part of her enrollment, plaintiff entered into an enrollment agreement with McCann. (Am. class action compl., ¶ 37). Plaintiff avers that, after enrollment, representatives of McCann continued to make assurances that the lab tech and surgical tech programs at the Carlisle campus were properly accredited and would lead to certification after sitting for the relevant certification examinations. (Am. class action compl., ¶ 40). The plaintiff ultimately learned, however, that the lab tech and surgical tech programs at the Carlisle campus were, in fact, not nationally accredited and did not allow her to sit for the relevant certification examination after graduation. (Am. class action compl., ¶ 42).

Counsel for the plaintiff makes further, similar, averments in order to establish a class action lawsuit. (Am. class action compl., ¶¶ 9-20, 25-33). Specifically, it is averred that the defendants solicited students to enroll in the lab tech and surgical tech programs through various means and that the putative class members sought additional information about the programs at the Carlisle campus as a result of the solicitations. (Am. class action compl., ¶¶ 11, 12). It is further averred that the putative class members were informed that they would be able to sit

for the relevant certification examination after completing their respective program and would then enjoy better job opportunities. (Am. class action compl., ¶¶13, 14). Like the named plaintiff, it is averred that the putative class members justifiably relied on statements by the defendants that the programs were properly accredited, that the putative class members discovered that the programs were not nationally accredited, and the putative class members were not able to sit for the relevant certification examinations as a result. (Am. class action compl., ¶¶ 15, 16). Based on the foregoing, plaintiff asserts at Count I, a claim for breach of contract; at Count II, a claim for violation of the Unfair Trade Practices and Consumer Protection Law, 73 P.S. §201-1, et. seq.; and at Count III, a claim for violation of the Federal Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(C), (D) to which the defendants preliminarily object and seek to have this court compel individual arbitration.

Pursuant to Pennsylvania Rule of Civil Procedure 1028(a), preliminary objections may be filed by any party to any pleading on several limited grounds, including, "pendency of a prior action or agreement for alternative dispute resolution...." Pa.R.C.P. 1028(a)(6). "An agreement to arbitrate may be asserted by preliminary objection or by petition to compel arbitration...." Note to Pa.R.C.P. 1028(a)(6). When considering preliminary objections, "all well-pleaded allegations and material facts averred in the complaint, as well as all reasonable inferences deducible therefrom, must be accepted as true." *Wurth by Wurth v. City of Philadelphia*, 584 A.2d 403, 407

(Pa. Cmwlth. 1990). However, the trial court "need not accept as true conclusions of law, unwarranted inferences from fact, argumentative allegations, or expressions of opinion." *Penn Title Ins. Co. v. Deshler*, 661 A.2d 481, 483 (Pa. Cmwlth. 1995).

The standard of review for a petition to compel arbitration is well settled. In disputes over whether arbitration should be compelled, "judicial inquiry is limited to determining (1) whether a valid agreement to arbitrate exists between the parties and, if so, (2) whether the dispute involved is within the scope of the arbitration agreement." *Smith v. Cumberland Group, Ltd.*, 687 A.2d 1167, 1171 (Pa. Super. 1997).

Here, the defendants seek to have the case dismissed and the matter ordered to arbitration pursuant to an arbitration provision contained in the enrollment agreement, which states:

ARBITRATION

You (the student) and McCann School of Business and Technology agree that any dispute arising out of our [sic] relating to this enrollment agreement, your enrollment or your attendance at McCann School of Business and Technology, whether such dispute arises during or after your attendance and whether the dispute is based on contract, tort, statute, or otherwise, shall be resolved by binding arbitration in the city and county which the school is located within the state of Pennsylvania. You (the student) and McCann School

of Business and Technology each further agrees that this arbitration provision provides each party with the exclusive remedy for redress of any grievance or resolution of any dispute arising out of this agreement, and each party expressly waives any right, including without limitation the right to trial by jury, it might have to seek redress in any federal, state or local court or other forum, except for an action to enforce in court an arbitration award rendered to this agreement.

(Aff., Ex. A).

The plaintiff counters that the foregoing arbitration agreement was located on the fourth page of the enrollment agreement. The plaintiff initialed provisions on the first and second pages and signed the second page, but there is no evidence to show that the plaintiff was ever presented the page containing the arbitration provision much less that she reviewed it and signed off on it.

As noted, we must determine if a valid agreement to arbitrate exists. However, before doing so, we must address the question of what body of law to apply. The defendants contend that the enrollment agreement involves interstate commerce and should be analyzed through the lens of the Federal Arbitration Act (hereinafter "FAA"), 9 U.S.C. §§ 1, et seq., because such agreements are regulated by the United States Department of Education and many students use federal student loans and grants to pay their tuition. The plaintiff has not conveyed a position on this issue. Regardless, even under the FAA, state law principles are to be used in determining the validity of the arbitration

agreement.

Section 2 of the FAA is the "primary substantive provision of the Act." *Moses H. Cone Mem'l. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1982) *superseded by statute on other grounds*. Section 2 states, "[a] written provision in any... contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. In the latter part of § 2, the "saving clause permits agreements to arbitrate to be invalidated by generally applicable contract defenses, such as fraud, duress, or unconscionability, but not by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue." *AT&T Mobility LLC v. Concepcion*, 131 S.Ct. 1740, 1746 (2011) (quotations omitted). In keeping with the *Conception* holding, the Pennsylvania Superior Court has held, "when addressing the specific issue of whether there is a valid agreement to arbitrate," under the FAA, "courts generally should apply ordinary state-law principles, that govern the formation of contracts, but in doing so, must give due regard to the federal policy favoring arbitration." *Pisano v. Extendicare Homes, Inc.*, 77 A.3d 651, 661 (Pa. Super. 2013) (quotations omitted).

Mindful of this background, we turn to the relevant principles in order to determine whether a valid arbitration agreement exists. In general:

A party's signature to a contract is designed to evidence his intention to be bound thereby. There is no requirement that a contract be signed at any particular place so long as the signatories attest the meeting of their minds on the basis of the agreed-upon writings and their intention to be obligated accordingly.

*Petrie v. Haddock*, 119 A.2d 45, 47 (Pa. 1956). However, "[a]ny agreement... by which it is intended to diminish legal rights which normally accrue as a result of a given legal relationship or transaction must spell out the intention of the parties with the greatest of particularity, since such contracts...are construed strictly against the party seeking their protection." *Morton v. Borough of Ambridge*, 101 A.2d 661, 662 (Pa. 1954). In line with this principle, it has routinely been held that arbitration agreements are to be strictly construed, *Cumberland-Perry Area Vocational-Technical Sch. Auth. v. Bogar & Bink*, 396 A.2d 433, 434-35 (Pa. Super. 1978), and that arbitration agreements "are upheld only where it is clear that the parties have agreed to arbitrate in clear and unmistakable manner." Quil*es v. Financial Exch. Co.*, 879 A.2d 281, 287 (Pa. Super 2005) (citing *Emmaus Mun. Auth. v. Eltz*, 204 A.2d 926 (Pa. 1964)).

Also, though the law favors arbitration agreements, "[i]t is...clear that the existence of an arbitration provision and a liberal policy favoring arbitration does not require the rubber stamping of all disputes as subject to arbitration." *McNulty v. H&R Block, Inc.*, 843 A.2d 1267, 1271 (Pa. Super. 2004). In *McNulty*, the court goes on to

state that, when determining the validity of an arbitration agreement, "it is clear that the court's role is greater than simply determining whether a contract has been signed." *Id.* at 1272.

Here, the enrollment agreement consists of four pages. The plaintiff has signed the second page of the enrollment agreement and makes no contention that the signature is not hers. However, the plaintiff argues that there is no evidence that she expressly agreed to the arbitration provision because the arbitration provision was on the fourth and final page of the enrollment agreement, while she signed the second page.

Initially, we make two observations. First, the pages of the enrollment agreement are labeled "Page ___ of 4" at the top right hand corner. Second, above the signature block on the second page of the enrollment agreement, there is a paragraph stating, in part, "I certify that all information provided about me is accurate and that *I have read all pages of this agreement and will be abide by its provisions*" (emphasis added). However, the size of the text that makes up this paragraph must undoubtedly be characterized as fine print. Additionally, while the paragraph states that all pages have been read, that particular paragraph does not mention the number of pages of the enrollment agreement.

On the first two pages of the enrollment agreement, in addition to the signature at the bottom of the second page, the plaintiff had to initial next to five separate paragraphs. In fact, that last paragraph of the five was apparently determined to be so important that its entire text was set

off in bold font. Comparatively, initials were not required by the arbitration provision.

In addition to not requiring initials, the arbitration provision of the enrollment agreement is surrounded by terms and conditions that are markedly less substantive than those contained on the first two pages, i.e., the terms and conditions above the signature. Most of the third and fourth pages of the enrollment agreement deal with refund policies. Rather than being a material part of the agreement that lays out conditions for enrollment, these provisions are information that institutions are required to provide to students regarding refund policies and information on Title IV requirements as to the treatment of Title IV funds when a student withdraws from enrollment. It is only after all of these recitations that the reader would find the arbitration provision. Finally, we note that the arbitration provision does contain a heading in all capital letters and set off in a bold style. However, the heading for the arbitration provision is noticeably smaller than the "return of unearned Title IV funds" heading above it.

The federal and Pennsylvania proclivity in favor of arbitration notwithstanding, in view of case law, it must be evident that an arbitration agreement was agreed to in a clear and unmistakable manner and courts must do more than just determine if the agreement was signed. Here, we find that there was no clear agreement to arbitrate.

While in isolation none of the above mentioned factors weighing against a clear agreement to arbitrate may be enough to find that there is no valid arbitration agreement,

the doubts are too numerous when examined together. A document need not be signed on the last page; however, that is not the only concern here. In addition to being near the end of the enrollment agreement, the arbitration provision is buried beneath mandatory notices and separated from the focal point of the document. While the defendants were careful to draw the plaintiff's attention to, apparently, vital information such as what hours the plaintiff must be available for class by requiring initials next to that portion of the enrollment agreement, the same treatment was not given to the area where the plaintiff waives the significant right to a jury trial. *See Bucks Orthopedic Surgery Assocs., P.C. v. Ruth*, 925 A.2d 868, 873 (Pa. Super. 2007) ("Additionally, it is axiomatic that waiving the right to trial must be a knowing and voluntary act of a party to a contract who is aware that the right is being waived"). The laissez-faire treatment of the arbitration provision is further seen by its heading being listed under the larger heading concerning the return of unearned Title IV funds and could appear to relate thereto. In sum, we cannot find that an agreement to arbitrate was reached in a clear and unmistakable manner.

## ORDER

And now, this 12th day of March, 2014, upon consideration of defendants' preliminary objections and petition to compel individual arbitration, and after argument, thereon, the preliminary objections of the defendants are overruled and the petition is denied.