ROGERS, J.,
I. INTRODUCTION
Appellant MTPCS, LLC d/b/a Cellular One[1] (“appellant MTPCS”) and third party appellants Jonathan Foxman, Daniel E. Hopkins, Broadpoint Holdco, LLC, Broadpoint, LLC, Central Louisiana Holdco, LLC, MTPCS Holdings, LLC, OK-5 Holdco, LLC and TX-10 Holdco, LLC[2] (together “appellants”) have appealed to the Superior Court of Pennsylvania (“Superior Court”) from this court’s orders dated and docketed on January 7, 2014, overruling appellants’ preliminary objections in part. For the reasons set forth below, the court’s January 7, 2014 orders should be affirmed and the case remanded for further proceedings.
II. FACTUAL AND PROCEDURAL HISTORY
The relevant facts and procedural history underlying this consolidated appeal are as follows. By letter dated *527 June 24, 2010, Third party appellant Jonathan Foxman offered appellee Charles M. Hollis (“Hollis”) the position of executive vice president and chief operating officer on behalf of appellant MTPCS. (Complaint, filed 8/7/12 (“complaint”), Exhibit A). Hollis, a resident of Fort Wayne, Indiana, agreed to commute to appellant’s headquarters in Wayne, Pennsylvania, for the first two years of employment. {Id.). In addition to signing the offer letter, Hollis also signed an employee and noncompetition agreement dated September 30, 2010 {Id. at Exhibit B), six restricted equity grant agreements dated September 30,2010 (joinder complaint against additional defendants, filed 10/9/12 (“joinder complaint”), Exhibits C-H) and, later, three second amended and restated limited liability company agreements and two amended and restated limited liability company agreements effective September 21, 2011 (preliminary objections of [appellant MTPCS], filed 12/28/12, Exhibits 2-6). In relevant part, the documents provide as follows:
EMPLOYEE AND NONCOMPETITION AGREEMENT
THIS EMPLOYEE AND NONCOMPETITION AGREEMENT (this “agreement”) is made as of September 30,2010 between [appellant] MTPCS, LLC, a Delaware limited liability company (the “company”) and [appellee] Charles M. Hollis (the “executive”).
⅝ ⅝ ⅝ *
18. Consent to jurisdiction.
(a) EACH OF THE PARTIES HERETO HEREBY CONSENTS TO THE JURISDICTION OF ALL *528 STATE AND FEDERAL COURTS LOCATED IN PENNSYLVANIA, AS WELL AS TO THE JURISDICTION OF ALL COURTS TO WHICH AN APPEAL MAY BE TAKEN FROM SUCH COURTS, FOR THE PURPOSE OF ANY SUIT, ACTION OR OTHER PROCEEDING ARISING OUT OF, OR IN CONNECTION WITH, THIS AGREEMENT OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY, INCLUDING, WITHOUT LIMITATION, ANY PROCEEDING RELATING TO ANCILLARY MEASURES IN AID OF ARBITRATION, PROVISIONAL REMEDIES AND INTERIM RELIEF, OR ANY PROCEEDING TO ENFORCE ANY ARBITRAL DECISION OR AWARD. EACH PARTY HEREBY EXPRESSLY WAIVES ANY AND ALL RIGHTS TO BRING ANY SUIT, ACTION OR OTHER PROCEEDING IN OR BEFORE ANY COURT OR TRIBUNAL OTHER THAN THE COURTS DESCRIBED ABOVE AND COVENANTS THAT IT SHALL NOT SEEK IN ANY MANNER TO RESOLVE ANY DISPUTE OTHER THAN AS SET FORTH IN THIS SECTION OR AS PROVIDED IN THE NONDISCLOSURE AND DEVELOPMENTS AGREEMENT, OR TO CHALLENGE OR SET ASIDE ANY DECISION, AWARD OR JUDGMENT OBTAINED IN ACCORDANCE WITH THE PROVISIONS HEREOF.
⅝ ⅝ ⅝ ⅝
20. Waiver of Jury Trial. EACH OF THE PARTIES HERETO HEREBY VOLUNTARILY AND IRREVOCABLY WAIVES TRIAL BY JURY IN ANY ACTION OR OTHER PROCEEDING BROUGHT *529 IN CONNECTION WITH THIS AGREEMENT OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY.
(Complaint, Exhibit B) (emphasis added).
RESTRICTED EQUITY GRANT AGREEMENT
THIS RESTRICTED EQUITY GRANT AGREEMENT (this “agreement”) is entered into as of [Sept. 30], 2010 by and between [third party LLC appellant], a Delaware limited liability company (the “company”) and Charles M. Hollis (the “executive”).
WHEREAS, the company and the executive have entered into that certain employment agreement, dated as of [Sept. 30], (the “employment agreement”), whereby the executive is accepting the position of executive vice president and chief operating officer; and
WHEREAS, the company and the executive desire to set forth the terms on which the company will grant and sell to the executive certain restricted equity interests in the company.
NOW, THEREFORE, in consideration of the foregoing and the mutual covenants and agreements hereinafter set forth, the parties hereto agree as follows:
1. Definitions. For the purposes of this agreement, the following terms shall have the following respective meanings.
* * * ⅝
“LLC agreement” shall mean the limited liability *530 company agreement or operating agreement among the members of the company, as in effect from time to time.
* * * ⅝
6. LLC Agreement. By signing this agreement, executive agrees to be bound by the terms of the LLC agreement and thereby admitted as a Class B member (as defined in the LLC agreement).
7. Miscellaneous Provisions.
* * * *
(h) Consent to Jurisdiction. EACH OF THE PARTIES HERETO HEREBY CONSENTS TO THE JURISDICTION OF ALL STATE AND FEDERAL COURTS LOCATED IN DELAWARE, AS WELL AS TO THE JURISDICTION OF ALL COURTS TO WHICH AN APPEAL MAY BE TAKEN FROM SUCH COURTS, FOR THE PURPOSE OF ANY SUIT, ACTION OR OTHER PROCEEDING ARISING OUT OF, OR IN CONNECTION WITH, THIS AGREEMENT OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY, INCLUDING, WITHOUT LIMITATION, ANY PROCEEDING RELATING TO ANCILLARY MEASURES IN AID OF ARBITRATION, PROVISIONAL REMEDIES AND INTERIM RELIEF, OR ANY PROCEEDING TO ENFORCE ANY ARBITRAL DECISION OR AWARD. EACH PARTY HEREBY EXPRESSLY WAIVES ANY AND ALL RIGHTS TO BRING ANY SUIT, ACTION OR OTHER PROCEEDING IN OR BEFORE ANY COURT OR TRIBUNAL *531 OTHER THAN THE COURTS DESCRIBED ABOVE AND COVENANTS THAT IT SHALL NOT SEEK IN ANY MANNER TO RESOLVE ANY DISPUTE OTHER THAN AS SET FORTH IN THIS SECTION OR AS PROVIDED IN THE NONDISCLOSURE AND DEVELOPMENTS AGREEMENT, OR TO CHALLENGE OR SET ASIDE ANY DECISION, AWARD OR JUDGMENT OBTAINED IN ACCORDANCE WITH THE PROVISIONS HEREOF. EACH OF THE PARTIES HERETO HEREBY EXPRESSLY WAIVES ANY AND ALL OBJECTIONS IT MAY HAVE TO VENUE, INCLUDING, WITHOUT LIMITATION, THE INCONVENIENCE OF SUCH FORUM, IN ANY OF SUCH COURTS. IN ADDITION, EACH OF THE PARTIES CONSENTS TO THE SERVICE OF PROCESS BY PERSONAL SERVICE OR ANY MANNER IN WHICH NOTICES MAY BE DELIVERED HEREUNDER IN ACCORDANCE WITH SECTION 7 OF THIS AGREEMENT.
⅜⅜‡⅜
(J) Waiver of Jury Trial. EACH OF THE PARTIES HERETO HEREBY VOLUNTARILY AND IRREVOCABLY WAIVES TRIAL BY JURY IN ANY ACTION OR OTHER PROCEEDING BROUGHT IN CONNECTION WITH THIS AGREEMENT OR ANY OF THE TRANSACTIONS CONTEMPLATED HEREBY.
(Joinder complaint against additional defendants, filed 10/9/12 (“joinder complaint”), Exhibits C-H) (emphasis added).
*532 Second amended and restated limited liability company agreement
This second amended and restated limited liability company agreement of [third party LLC appellant] (the “company”) is made as of September 21, 2011 (the “effective date”) by and among the persons listed on Schedule Ato this agreement as Class Amembers..., the persons listed on Schedule A to this agreement as Class B members ... The Class A members and the Class B members sometimes are referred to collectively in this agreement as the “members,” and each individually as a “member.”
WHEREAS, the company was formed as a limited liability company under the Delaware Limited Liability Company Act... by the... entry by the company into that certain limited liability company agreement dated as of March 26, 2010 as the sole member of the company;
* * * *
WHEREAS, in connection with (i) the recapitalization of the units..., (ii) the admission of certain other persons as members and (iii) the amendment of the terms of the limited liability company agreement dated as March 26, 2010, the members entered into the amended and restated limited liability company agreement dated as of June 16, 2010; and
WHEREAS, the company and each member ... desire to amend and restate that certain amended and restated limited liability company agreement, dated as of June 16, 2010, as amended, modified, supplemented or restated from time to time as set forth herein.
*533 * * * *
10.03. Entire Agreement. This agreement and each member’s agreement, as the case may be, constitutes the entire agreement of the members relating to the company and supersedes all prior contracts or agreements with respect to the company, whether oral or written, and, to the extent that the terms of any employment agreement vary in any respect from the terms of this agreement, this agreement shall control and take precedence.
10.04. Limitation of Litigation; dispute resolution. All disputes, claims, or controversies arising out of or relating to this agreement, or any other agreement executed and delivered pursuant to this agreement, or the negotiation, validity or performance hereof and thereof or the transactions contemplated hereby and thereby, that are not resolved by mutual agreement shall be resolved solely and exclusively by binding arbitration to be conducted before J.A.M.S. or its successor. The parties understand and agree that this arbitration provision shall apply equally to claims of fraud or fraud in the inducement. The arbitration shall be held in Boston, Massachusetts before a single arbitrator and shall be conducted in accordance with the rules and regulations promulgated by J.A.M.S. unless specifically modified herein.
* * ⅝ *
(e) Each of the parties hereto irrevocably and unconditionally consents to the exclusive jurisdiction of J.A.M.S. to resolve all disputes, claims or controversies *534 arising out of or relating to this agreement or any other agreement executed and delivered pursuant to this agreement or the negotiation, validity or performance hereof and thereof or the transactions contemplated hereby and thereby and further consents to the jurisdiction of the courts of Massachusetts for the purposes of enforcing the arbitration provisions of Section 10.04 of this agreement.
* * * *
10.07. Governing Law; Severability. This agreement is governed by and shall be construed in accordance with the law of the State of Delaware, exclusive of its conflict-of-laws principles.
(Preliminary objections of [appellant MTPCS] to counterclaim of Hollis, filed 12/28/12, Exhibits 2-6) (emphasis added).
Although Hollis received bonuses as well as salary increases for 2011 based on his performance, appellant MTPCS through third party appellant Foxman terminated his employment on March 16,2012. (Joinder complaint at ¶¶ 33-38,42). On August 7,2012, appellant MTPCS filed a complaint in the Court of Common Pleas of Montgomery County against Hollis and another former employee, alleging tortious conduct as well as breach of contract on the part of Hollis and seeking damages pursuant to the employment agreement.[3]
*535 On October 9, 2012, Hollis filed his answer with new matter and counterclaim against appellant MTPCS as well as a joinder complaint against third party appellants. In Count IV of the counterclaim as well as Count IV of the joinder complaint, Hollis asserts a claim for fraudulent inducement. Taking the facts as alleged by Hollis, appellants had represented that “no executive’s equity interests were or would be vesting on an accelerated schedule, and/or otherwise have their vesting schedule changed or altered, when in fact the equity interests of several executives... were changed to vest on an accelerated schedule or became fully vested.” (Counterclaim, filed 10/9/12 (“Counterclaim”), at ¶ 90; joinder complaint at ¶ 114). “Hollis would not have agreed to sign documents associated with the refinancing transaction had he known the true facts regarding the accelerated vesting of other executives’ equity interests.” {Id. at 117). According to Count IV of the counterclaim and the joinder complaint, Hollis suffered the loss of the immediate and full vesting of his equity interests in contravention of the employment and restricted equity agreements. {Id. at ¶ 119). In Count VII of the joinder complaint, Hollis alleged a breach of fiduciary duty by third party appellants Foxman and Hopkins through their acts constituting, inter alia, fraudulent inducement. (Joinder complaint, Count VII).
More than seventy-five (75) days later, appellants filed numerous preliminary objections to Hollis’s counterclaim and joinder complaint on December 28, 2012. Appellants asserted in relevant part that Hollis, a resident of Fort Wayne, Indiana, must defend against their claims in Pennsylvania, but litigate his counterclaims separately in the courts of Pennsylvania and Delaware and at private *536 arbitration in Boston, Massachusetts, based upon the three (3) different forum selection clauses in the three (3) agreements.
Upon review of the record, the issues presented to this court, the applicable law and after hearing argument, the undersigned sustained appellants’ preliminary objections in the nature of a motion to strike Hollis’s demand for attorney’s fees from certain counts and overruled the objections to Hollis’s claims for breach of contract, fraudulent inducement, breach of fiduciary duty and civil conspiracy by two orders dated January 7,2014. (January 7, 2014 Orders). The undersigned also overruled appellants’ preliminary objections in the nature of a motion to strike Hollis’s demand for punitive damages. (Id.). Appellants filed their respective answers with new matter to the counterclaim and the joinder complaint on January 27, 2014. Each new matter contains an averment that Hollis’s claims for fraudulent inducement and breach of fiduciary duty fail because they are subject to the binding arbitration provision in the amended operating agreements.[4]
On February 5, 2014, appellants filed two separate notices of appeal to the Superior Court. The undersigned issued two orders onFebruary 18,2014, directing appellants to file concise statements of the errors complained of on appeal (“concise statement”). Appellants filed their concise statements on March 10, 2014. The Superior *537 Court consolidated the appeals sua sponte by order filed on April 1, 2014.
III. ISSUES
Appellants raise the following issues on appeal:
Whether the court erred in its order: preliminary objections of plaintiff, MTPCS, LLC d/b/a Cellular One, to counterclaims of defendant Charles Hollis by overruling plaintiff’s preliminary objection pursuant to Pa.R.C.P. 1028(a)(6) as to Count IV (fraudulent inducement) of the counterclaim of defendant Charles Hollis (“Hollis”) and refixsing to compel Hollis to submit his fraudulent inducement claim to binding arbitration as required under the terms of the amended and restated limited liability agreements for Broadpoint Holdco, LLC, Central Louisiana Holdco, LLC, MTPCS Holdings, LLC, OK-5 Holdco, LLC, and TX-10 Holdco, LLC (the “amended operating agreements”), where: (a) the amended operating agreements contain valid arbitration provisions that are binding on Hollis; and (b) Hollis’ fraudulent inducement claim falls within the scope of the arbitration provisions.
(Appellant MTPCS’s concise statement filed March 10, 2014).
Whether the court erred in its order: third party defendants’ preliminary objections to joinder complaint of defendant Charles Hollis by overruling third party defendants’ preliminary objection pursuant to Pa.R.C.P. 1028(a)(6) as to Counts IV (fraudulent inducement) and VII (breach of fiduciary duty) of the joinder complaint of defendant Charles Hollis (“Hollis”) and refusing to *538 compel Hollis to submit his fraudulent inducement and breach of fiduciary duty claims to binding arbitration as required under the terms of the amended and restated limited liability agreements for Broadpoint Holdco, LLC, Central Louisiana Holdco, LLC, MTPCS Holdings, LLC, OK-5 Holdco, LLC, and TX-10 Holdco, LLC (the “amended operating agreements”), where: (a) the amended operating agreements contain valid arbitration provisions that are binding on Hollis; and (b) Hollis’ fraudulent inducement and breach of fiduciary duty claims fall within the scope of the arbitration provisions.
(Third party appellants’ concise statement filed March 10, 2014).[5]
IV. DISCUSSION
In their single issue on appeal, appellants assert that this court erred by refusing to compel Hollis to submit two of his claims to binding arbitration in Boston, Massachusetts. The court disagrees.
As a prefatory matter, the only ruling currently on appeal is the undersigned’s decision to overrule appellants’ preliminary objections in the nature of a motion to dismiss Hollis’s counterclaim for fraudulent inducement and Hollis’s joinder complaint counts for fraudulent inducement and breach of fiduciary duty based on the amended operating agreements’ arbitration clause mandating private arbitration in Boston, Massachusetts. Among appellants’ numerous objections, only this ruling *539 is arguably immediately appealable.[6] See Midomo Company, Inc. v. Presbyterian Housing Development Company, 739 A.2d 180, 183-184 (Pa. Super. 1999).[7]
Pennsylvania courts generally favor the settlement of disputes by arbitration as a matter of public policy. Elwyn v. DeLuca, 48 A.3d 457, 461(Pa. Super. 2012). Nevertheless, this liberal policy “does not require the rubber stamping of all disputes as subject to arbitration.” McNulty v. H&R Block, Inc., 843 A.2d 1267, 1271 (Pa. Super. 2004). “[T]he issue of whether a party agreed to arbitrate a dispute is a threshold, jurisdictional question that must be decided by the court.” Pisano v. Extendicare Homes, Inc., 77 A.3d 651, 654(Pa. Super. 2013) (citation omitted).
With respect to the application of an arbitration agreement, the Superior Court has instructed:
Where aparty to a civil action seeks to compel arbitration, a two-part test is employed. Id. First, the trial court must establish if a valid agreement to arbitrate exists between the parties. Id. Second, if the trial court determines such an agreement exists, it must then ascertain if the dispute involved is within the scope of the arbitration provision. Id. If a valid arbitration agreement exists between the parties, and the plaintiff’s claim is within the scope of the agreement, the controversy must be submitted to arbitration. Highmark Inc. v. Hospital Service Ass ’n. of Northeastern Pennsylvania, 785 A.2d 93, 98 (Pa. Super. 2001), appeal denied, 568 Pa. 720, 797 A.2d 914 (2002).
*540 This court has explained the interpretation of arbitration agreements as follows:
(1) arbitration agreements are to be strictly construed and not extended by implication; and (2) when parties have agreed to arbitrate in a clear and unmistakable manner, every reasonable effort should be made to favor the agreement unless it may be said with positive assurance that the arbitration clause involved is not susceptible to an interpretation that covers the asserted dispute.
Id., at 98. “To resolve this tension, courts should apply the rules of contractual constructions, adopting an interpretation that gives paramount importance to the intent of the parties and ascribes the most reasonable, probable, and natural conduct to the parties.” Id. In interpreting a contract, the ultimate goal is to ascertain and give effect to the intent of the parties as reasonably manifested by the language of their written agreement. Id.
Callan v. Oxford Land Development, Inc., 858 A.2d 1229, 1233 (Pa. Super. 2004). Accord Setlock v. Pinebrook Personal Care and Retirement Center, 56 A.3d 904, 907-OS (Pa. Super. 2012). “In analyzing the contract, [a court] must take care to note the surrounding circumstances, the situation of the parties when the contract was made, and the objects they apparently had in view and the nature of the subject matter.” McNulty, supra at 1272 (citing Huegel v. Mifflin Construction Company, Inc., 796 A.2d 350, 354 (Pa. Super. 2002)).
Additionally, Pennsylvania law provides “[w]here several instruments are made as part of one transaction they will be read together, and each will be construed *541 with reference to the other; and this is so although the instruments may have been executed at different times and do not in terms refer to each other.” Southwestern Energy Production Company v. Forest Resources, LLC, 83 A.3d 177, 187 (Pa. Super. 2013) (quoting Huegel, supra at 354-55). Accord International Milling Company v. Hachmeister, 380 Pa. 407, 417-18, 110 A.2d 186, 191 (1955). Further, agreements all dealing with the same subject matter may be interpreted together, even though they are not made by the same parties. See Conshohocken Federal Savings and Loan Association v. Period and Country Homes, Inc., 430 A.2d 1173, 1179 (Pa. Super. 1981) (interpreting intent of parties who signed three interrelated construction and loan agreements).
In support of their position that Hollis, a resident of Fort Wayne, Indiana, must defend against Appellant MTPCS’s claims in Montgomery County, Pennsylvania, but litigate his counterclaims separately in Pennsylvania, Delaware and Massachusetts, appellants cited general propositions from cases which are distinguishable from the matter argued before this court. See e.g. Central Contracting Company v. C.E. Youngdahl & Company, Inc., 418 Pa. 122, 209 A.2d 810 (1965); Autochoice Unlimited, Inc. v. Avangard Auto Finance, Inc., 9 A.3d 1207 (Pa. Super. 2010); O’Hara v. First Liberty Insurance Corporation, 984 A.2d 938 (Pa. Super. 2009), and Patriot Commercial Leasing Company, Inc. v. Kremer Restaurant Enterprises, LLC, 915 A.2d 647 (Pa. Super. 2006).[8]
*542 In Central Contracting, supra, the arbitration agreement at issue designated the proper forum for disputes as the courts of the County of New York, State of New York. The Pennsylvania Supreme Court reiterated the applicable law as follows:
The modem and correct mle is that, while private parties may not by contract prevent a court from asserting its jurisdiction or change the rales of venue, nevertheless, a court in which venue is proper and which has jurisdiction should decline to proceed with the cause when the parties have freely agreed that litigation shall be conducted in another forum and where such agreement is not unreasonable at the time of litigation. Such an agreement is unreasonable only where its enforcement would, under all circumstances existing at the time of litigation, seriously impair plaintiff’s ability to pursue his cause of action. Mere inconvenience or additional expense is not the test of unreasonableness since it may be assumed that the plaintiff received under the contract consideration for these things. If the agreed upon forum is available to plaintiff and said forum can do substantial justice to the cause of action then plaintiff should be bound by his agreement. Moreover, the party seeking to obviate the agreement has the burden of proving its unreasonableness.
Id. at 133-134, 209 A.2d at 816 (citations omitted). The Central Contracting Court remanded the case back to the Allegheny County Common Pleas Court for a determination as to whether that court had jurisdiction and whether the agreement was or was not unreasonable. Id. at 134-135, 209 A.2d at 816-817.
*543 In O’Hara v. First Liberty Insurance Corporation, 984 A.2d 938 (Pa. Super. 2009), the insureds brought a breach of contract claim in Philadelphia County against their automobile insurance company for underinsured motorist benefits. The Superior Court affirmed the Philadelphia trial court’s decision to sustain the insurer’s preliminary objection to venue based upon a forum selection clause contained in the insurance policy which required insureds to bring any lawsuit in a court of competent jurisdiction in the county and state of the insured’s legal domicile at the time of the accident. Id. at 939. Because the insureds lived in Delaware County, the Philadelphia trial court transferred the case to the Court of Common Pleas of Delaware County. Id. Writing for the majority, Judge Kelly concluded, in part, “[ajppellants have failed to persuade us that requiring them to litigate their lawsuit in the county in which they live and in which the accident occurred would ‘injure the public or be against the public good rid. at 943.
The dispute in Autochoice Unlimited, Inc. v. Avangard Auto Finance, Inc., 9 A.3d 1207 (Pa. Super. 2010) centered on a dealer agreement entered into between two corporate entities who agreed to Florida as the proper venue and choice of law. Id. at 1209. The Superior Court panel determined, inter alia, that the plaintiff did not sustain its burden of proving unreasonableness. Id. at 1216. Accordingly, the court held that the Philadelphia County trial court did not abuse its discretion or err in sustaining the defendants’ preliminary objection to forum in Philadelphia based on that agreement. Id. at 1209.
Finally, in Patriot Commercial Leasing Company, Inc. v. Kremer Restaurant Enterprises, LLC, 915 A.2d 647 (Pa. *544 Super. 2006), the Superior Court upheld a Montgomery County trial court’s decision to overrule preliminary objections based upon the forum selection clauses in several contracts between commercial entities. In virtually the reverse factual scenario of the instant lawsuit, the multiple commercial defendants from Missouri, Wisconsin and Alabama in Patriot Commercial Leasing objected to litigating their equipment leasing agreements in Montgomery County. Id. at 649. One of the reasons cited by the Montgomery County court for retaining jurisdiction was the conservation of resources. Id. at 652.
Instantly, there is no question that litigating this matter in three (3) separate forums would be inconvenient and expensive. The issue is whether enforcing the three (3) different clauses would “seriously impair” Hollis’s lawsuit.[9] See Morgan Trailer Manufacturing Company v. Hydraroll, Ltd., 759 A.2d 926, 930 (Pa. Super. 2000) (concluding contract requiring Pennsylvania plaintiff to litigate in England would seriously impair plaintiff’s lawsuit). The undersigned determined that enforcing the three (3) different forum selection clauses in three (3) different states would seriously impair Hollis’s lawsuit.
Appellant MTPCS filed a lawsuit in Montgomery County alleging fraud, breach of fiduciary duties/duty of loyalty, civil conspiracy, unjust enrichment, forfeiture/ disgorgement and breach of contract, based upon the parties’ employment agreement and an employee policy manual. Pursuant to Rules 1030, 1031 and 2252 of the *545 Pennsylvania Rules of Civil Procedure, Hollis filed his new matter as well as a counterclaim and a joinder complaint in Montgomery County. Appellants presented no case to this court with facts similar to the instant matter in support of their position that Hollis must defend against appellant MTPCS ⅛ complaint in Montgomery County but litigate his counterclaims in the courts of Pennsylvania and Delaware and at private arbitration in Boston, Massachusetts.
Hollis asserts that the three (3) separate agreements with three (3) different forum selection clauses preclude Hollis from selecting one forum in which to litigate his claims which are based upon the three agreements. Hollis relies upon Array Healthcare Facilities Solutions, Inc. v. Pesce,[10] in support of his argument that the entire matter should stay in the Montgomery County Court of Common Pleas.
In Array Healthcare, the Honorable Allan L. Tereshko determined that the two agreements in question, an employment agreement and a buy-sell agreement, were independent documents and that the arbitration clause in one agreement did not apply to the other. Id. at 559. Rather than split the two actions and sending one to Cumberland County, however, the trial court cited Pa.R.C.P. 213.1 in support of coordinating the actions in Philadelphia County. Id. at 559-560. Judge Tereshko explained the rationale as follows:
the promotion of judicial efficiency and the minimization of delay, costs, redundancy and possibility *546 of inconsistent verdicts that may occur from separate proceedings far outweigh any prejudice associated with coordination of actions in the Philadelphia Court of Common Pleas. See Pa.R.C.P. 213.1(a). Rule 213.1(a) provides for coordination of actions when there are proceedings pending in different counties which involve a common question of law or fact or which arise from the same transaction or occurrence. The interest in coordinating actions before the Philadelphia Court of Common Pleas would prevent having arbitration in Cumberland County pursuant to the buy-sell agreement and a trial in Philadelphia Court of Common Pleas on the employment agreement. This could also result in an inconsistent verdict with the findings of the Philadelphia Court of Common Pleas.

Array Healthcare, supra.

The Honorable Terrence R. Nealon recently applied similar reasoning in Bingham v. Poswistilo, 2011 WL 8809426 (Lackawanna Cty. 2011) to join and try tort and underinsured motorist claims in a single action where the claims share common questions of fact or law following Koken.[11] In his review of the cases favoring joinder under Pa.R.C.P. 2229, Judge Nealon noted “courts within those judicial districts have concluded that joinder of tort and UIM claims also conserves limited judicial resources, avoids multiplicity of suits and unnecessary litigation delay and expense, and safeguards against inconsistent verdicts in separate proceedings.” Id. at *5.
Finally, as the Superior Court has previously explained:
*547 Avoiding the public court system to save time and money is a laudable societal goal. But, avoiding the public court system in a way that effectively denies citizens access to resolving everyday societal disputes is unconscionable. Goals favoring arbitration of civil disputes must not be used to work oppression. When the goals given in support of contract clauses like this are used as a sword to strike down access to justice instead of as a shield against prohibitive costs, we must defer to the overriding principle of access to justice.
McNulty, supra at 1274.[12]
Instantly, this court found that the three agreements at issue were interrelated and that the same parties as well as common questions of fact and law militated in favor of retaining jurisdiction for all claims. Moreover, appellant MTPCS’s principal place of business is in Montgomery County, third party appellants Foxman and Hopkins both reside in Montgomery County and the third party limited liability companies all maintain their principal place of business in Montgomery County. (Answer to joinder complaint ¶¶ 2-13). While Array Healthcare and Bingham are factually distinguishable, the logic therein is sound. The undersigned concludes, in line with other Pennsylvania trial courts, that the avoidance of multiplicity of suits and unnecessary litigation delay and expense as well as the safeguards against inconsistent verdicts in *548 separate proceedings all weigh in favor of litigating the entire matter in one forum, the Montgomery County Court of Common Pleas. Accordingly, appellants’ issue warrants no relief.
V. CONCLUSION
Based upon the reasoning set forth herein, the undersigned respectfully requests that the court’s January 7, 2014 orders be affirmed and the case remanded for further proceedings.

. MTPCS, LLC d/b/a Cellular One is the plaintiff in the underlying action.

. Jonathan Foxman, Daniel E. Hopkins, Broadpoint Holdco, LLC, Broadpoint, LLC, Central Louisiana Holdco, LLC, MTPCS Holdings, LLC, OK-5 Holdco, LLC and TX-10 Holdco, LLC are third party defendants in the underlying action.

. Appellant MTPCS’s complaint contains counts in fraud, breach of fiduciary duty, civil conspiracy, unjust enrichment, forfeiture/ disgorgement and breach of contract. Notably, the complaint demands a jury trial even though the employment agreement contains a waiver of jury trial provision. (Complaint, Exhibit B at ¶ 20).

. Appellants have preserved their objections to forum for a potential appeal upon entry of a final order. By filing a complaint in Montgomery County and their respective answers to Hollis’s counterclaim and joinder complaint, appellants have arguably waived their right to an immediate interlocutory appeal. See generally, Stanley-Laman Group, Ltd. v. Hyldahl, 939 A.2d 378 (Pa. Super. 2007). The court notes that appellants filed their notices of appeal on the twenty-ninth (29th) day, nine (9) days after filing their answers.

. Because appellants have raised identical forum arguments, the court will address them together.

. See footnote 4 supra.

. Appellants did not file a petition to compel arbitration but, rather, preliminary objections seeking dismissal pursuant to Pa.R.C.P. 1028(a) (6).

. Appellants also rely upon KPMG LLP v. Cocchi, 132 S.Ct. 23 (2011) (quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213 (1985)) and Salley v. Option One Mortgage Corporation, 592 Pa. 323, 925 A.2d 115 (2007). Both cases analyze agreements under the Federal Arbitration Act, 9 U.S.C.A. § 1 et seq. which is not applicable in the case sub judice.

. The court acknowledges that only its decision declining to compel arbitration in Boston, Massachusetts is on appeal. However, to properly reach this decision, the court was required to view all of the surrounding circumstances and the situation of the parties at the time of litigation. See Central Contracting, supra\ McNulty, supra.

. 2 Pa. D.&C. 5th 547 (Philadelphia Cty. 2006), affirmed, 931 A.2d 60 (Pa. Super. 2007) (Table).

. Insurance Federation of Pennsylvania, Inc. v. Koken, 585 Pa. 630, 889 A.2d 550 (2005).

. Writing for the majority in McNulty, Judge Klein quoted from Lytle v. CitiFinancial Services, Inc., 810 A.2d 643, 667-68 (Pa. Super. 2002). The Pennsylvania Supreme Court has since abrogated the holding in Lytle that mandatory arbitration agreements in foreclosure actions under the Federal Arbitration Act are presumptively unconscionable where they reserve judicial remedies. Salley v. Option One Mortgage Corporation, supra. Notably, this court is not reaching the legal question of unconscionability.