J-S56018-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| GLORIA J. GARCIA, AS ATTORNEY-IN-FACT FOR GLORIA MARIE ECKERT | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| HCR MANORCARE, LLC; MANORCARE OF SINKING SPRING PA, LLC D/B/A MANORCARE HEALTH SERVICES - SINKING SPRING; MANORCARE HEALTH SERVICES, INC. A/K/A MANORCARE HEALTH SERVICES, LLC; MANOR CARE INC.; HCR MANORCARE, INC.; HCR IV HEALTHCARE, LLC.; HCR III HEALTHCARE, LLC; HCR II HEALTHCARE, LLC; HCRMC OPERATIONS, LLC; HCR MANORCARE OPERATIONS II, LLC & HEARTLAND EMPLOYMENT SERVICES; KINDRED HEALTHCARE, INC., PERSONACARE OF READING, INC. D/B/A KINDRED TRANSITIONAL CARE & REHABILITATION - WYOMISSING; KINDRED NURSING CENTERS EAST, LLC; KINDRED HEALTHCARE OPERATING, INC. | |
| APPEAL OF: HCRMC OPERATIONS, LLC; HCR MANORCARE OPERATIONS II, LLC & HEARTLAND EMPLOYMENT SERVICES HCR MANORCARE, INC.; HCR IV HEALTHCARE, LLC.; HCR III HEALTHCARE, LLC; HCR II HEALTHCARE, LLC HCR MANORCARE, LLC; MANORCARE OF SINKING SPRING PA, LLC D/B/A MANORCARE HEALTH SERVICES - SINKING SPRING; MANORCARE HEALTH SERVICES, INC. A/K/A MANORCARE HEALTH SERVICES, LLC; MANOR CARE INC. | |
| Appellant | No. 1743 MDA 2014 |

J-S56018-15

Appeal from the Order Entered September 2, 2014
In the Court of Common Pleas of Berks County
Civil Division at No(s): 13-27281

BEFORE:  SHOGAN, J., JENKINS, J., and PLATT, J.[*]

MEMORANDUM BY JENKINS, J.:                    **FILED JANUARY 12, 2016**

Appellants HCRMC Operations, LLC *et al.* (collectively "Appellants" or "Manor Care")[1] appeal from the trial court's order overruling their preliminary objections seeking to compel arbitration in this action filed by Appellee, Gloria J. Garcia ("Garcia" or "Appellee"), as attorney-in-fact for her mother, Gloria Marie Eckert ("Mother").  Appellants based the preliminary objections on the existence of an arbitration agreement drafted by Manor Care and signed by Robert Eckert, Mother's husband ("Husband"), upon Mother's admission to Appellants' facility ("Agreement").  For the reasons that follow, we reverse and remand this case for referral to arbitration.

In September 2012, Mother broke her hip in a fall.  On September 22, 2012, after undergoing a hip replacement surgery, Mother was admitted into one of Manor Care's skilled nursing facilities in Sinking Spring, Pennsylvania

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Appellants are: HCRMC Operations, LLC; HCR ManorCare Operations II, LLC & Heartland Employment Services; HCR ManorCare, Inc.; HCR IV Healthcare, LLC; HCR III Healthcare, LLC; HCR II Healthcare, LLC; HCR ManorCare, LLC; ManorCare of Sinking Spring PA, LLC d/b/a ManorCare Health Services – Sinking Spring; ManorCare Health Services, Inc. a/k/a ManorCare Health Services, LLC; and Manor Care, Inc.

- 2 -

for the purpose of rehabilitation. On September 24, 2012, Husband, who was Mother's durable power of attorney ("DPOA"),[2] signed the Agreement on Mother's behalf. Mother left the Manor Care facility on October 2, 2012, after only 10 days, and became a resident of Kindred Transitional Care & Rehabilitation-Wyomissing,[3] where she resided until November 7, 2012.

On December 23, 2013, Appellee initiated the underlying litigation on Mother's behalf by filing a complaint that alleged Mother suffered injuries as the result of medical professional negligence perpetrated by Manor Care and the Kindred defendants at their respective nursing care facilities. Manor Care filed preliminary objections alleging, *inter alia*, that the claims against Manor Care were subject to arbitration pursuant to the terms of the Agreement.[4] Following initial briefing, discovery that included the depositions of Mother, Husband, and Lynette Seiler Wirth, the Nursing Home Administrator at the Manor Care facility where Mother had stayed, and

_____

[2] Husband was Mother's DPOA from September 5, 2006 through November 12, 2012, when Mother removed Husband and appointed Appellee, her daughter, as her DPOA.

[3] The underlying litigation also included the following as additional named defendants: Kindred Healthcare, Inc.; PersonaCare of Reading, Inc. d/b/a Kindred Transitional Care & Rehabilitation – Wyomissing; Kindred Nursing Centers East, LLC; and Kindred Healthcare Operating, Inc. (collectively "the Kindred defendants"). The Kindred defendants did not appeal the trial court's order.

[4] The Kindred defendants filed similar preliminary objections on their own behalf.

subsequent post-discovery briefing, the trial court heard oral argument on Manor Care's preliminary objections. The trial court overruled Manor Care's preliminary objections by order dated September 2, 2014. Manor Care timely appealed.[5]

Manor Care raises the following issues for our review:

1. Did the trial court err by failing to take into account or apply the emphatic federal and state policies favoring arbitration and the presumption of arbitrability contained in the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), the Pennsylvania Uniform Arbitration Act, 42 Pa.C.S.[] § 7301, *et seq.* ("PUAA"), and extensive case law interpreting those provisions?

2. Did the trial court err by finding that the Voluntary Arbitration Agreement was both substantively and procedurally unconscionable?

3. Did the trial court err by finding that Robert Eckert was incompetent to sign the Voluntary Arbitration Agreement that he signed on behalf of Gloria Marie Eckert?

4. Did the trial court err by finding that there was no knowing waiver of the right to a trial by jury?

Appellants' Brief, p. 4.

The Agreement in dispute in this matter reads as follows:

**VOLUNTARY ARBITRATION AGREEMENT ("AGREEMENT")**

**THE PARTIES ARE WAIVING THEIR RIGHT TO A TRIAL BEFORE A JUDGE OR JURY OF ANY DISPUTE BETWEEN THEM. PLEASE READ CAREFULLY BEFORE SIGNING. THE PATIENT WILL RECEIVE SERVICES IN THIS CENTER WHETHER OR NOT THIS AGREEMENT IS SIGNED. ARBITRATION IS DESCRIBED IN THE VOLUNTARY**

---

[5] Both Manor Care and the trial court complied with Pa.R.A.P. 1925.

**ARBITRATION PROGRAM BROCHURE COPY, ATTACHED AND MADE PART OF THIS AGREEMENT.**

Made on _____ (date) by and between the Patient _____ or Patient's Legal Representative _____[6] (collectively referred to as "Patient") and the Center _____.

**1. Agreement to Arbitrate "Disputes":** All claims arising out of or relating to this Agreement, the Admission Agreement or any and all past or future admissions of the Patient at this Center, or any sister Center operated by any subsidiary of HCR ManorCare, Inc. ("Sister Center"), including claims for malpractice, shall be submitted to arbitration. Nothing in this Agreement prevents the Patient from filing a complaint with the Center or appropriate governmental agency or from seeking review under any applicable law of any decision to involuntarily discharge or transfer the Patient.

**2. Demand for Arbitration:** [S]hall be written, sent to the other Party by certified mail, return receipt requested.

**3. FAA:** The Parties agree and intend that this Agreement, the Admission Agreement and the Patient's stays at the Center substantially involve interstate commerce, and stipulate that the Federal Arbitration Act ("FAA") and applicable federal case law apply to this Agreement, preempt any inconsistent State law and shall not be reverse preempted by the McCarran-Ferguson Act; United States Code Title 15, Chapter 20, or other law. Any amendment to such version of the FAA is hereby expressly waived.

**4. Arbitration Panel:** Three (3) arbitrators (the "Panel") shall conduct the arbitration. Each Party will select one Arbitrator, the two selected Arbitrators will select a third. Each Arbitrator must be a retired State or Federal Judge or a Member of the State Bar where the Center is located with at least 10 years of experience as an attorney. The Panel will elect a Chief Arbitrator who will be responsible for establishing and resolving issues pertaining to

_____

[6] Mother's name was handwritten on the line for "Patient", and Husband's name was handwritten as "Patient's Legal Representative". Agreement, p. 1.

procedure, discovery, admissibility of evidence, or any other issue.

**5.  Sole Decision Maker:**  Except as otherwise provided in 6 below, the Panel is empowered to, and shall, resolve all disputes, including without limitation, any disputes about the making, validity, enforceability, scope, interpretation, voidability, unconscionability, preemption, severability and/or waiver of this Agreement or the Admission Agreement, as well as resolve the Parties' underlying disputes, as it is the Parties' intent to avoid involving the court system.  The Panel shall <u>not</u> have jurisdiction to certify any person as a representative of a class of persons and, by doing so, adjudicate claims of persons not directly taking part in Arbitration.

**6.  Procedural Rules and Substantive Law:**  The Panel shall apply the State Rules of Evidence and State Rules of Civil Procedure except where otherwise stated in this Agreement.  Also, the Panel shall apply, and the arbitration award shall be consistent with, the State substantive law, including statutory damage caps, for the State in which the Center is located, except as otherwise stated in this Agreement or where preempted by the FAA.  The Panel's award must be unanimous and shall be served no later than 7 working days after the arbitration hearing.  The award must state the Panels' [sic] findings of fact and conclusions of law, shall be marked "confidential", and must be signed by all three Arbitrators.  If any damages are awarded, the award must delineate specific amounts for each type of damages awarded, i.e., economic, non-economic, etc.  The failure of the Panel to issue a unanimous award creates an appealable issue, appealable to the appropriate court, in addition to those set forth in paragraph 7, below.  In the event the appellate court finds a non-unanimous award invalid as against law or this Agreement, the award shall be vacated and the arbitration dismissed without prejudice.  A subsequent arbitration, if any, of the same claim or claims shall remain subject to the terms of the Agreement.

**7.  Final with Limited Rights to Review (Appeal):**  The Panel's award binds the parties.  The Parties have a limited right of appeal for only the express reasons allowed by the FAA or as provided in 6, above.

**8.  Right to Change Your Mind:**  This Agreement may be cancelled by written notice sent by certified mail to the Center's

Administrator within 30 calendar days of the Patient's date of admission.  If alleged acts underlying the dispute occur before the cancellation date, this Agreement shall be binding with respect to those alleged acts.  If not cancelled, this Agreement shall be binding on the Patient for this and all of the Patient's subsequent admissions to the Center or any Sister Center without need for further renewal.

**9.  Binding on Parties & Others:**  The Parties intend that this Agreement shall benefit and bind the Center, its parent, affiliates, and subsidiary companies, and shall benefit and bind the Patient (as defined herein), his/her successors, spouses, children, next of kin, guardians, administrators, and legal representatives.

**10.  Fees and Costs:**  The Panels' [sic] fees and costs will be paid by the Center except in disputes over non-payment of Center charges wherein such fees and costs will be divided equally between the Parties.  The Parties shall bear their own attorney fees and costs in relation to all preparation for and attendance at the arbitration hearing.

**11.  Confidentiality:**  The arbitration proceedings shall remain confidential in all respects, including all filings, deposition transcripts, discovery documents, or other material exchanged between the Parties and the Panels' [sic] award.  In addition, following receipt of the Panels' [sic] award, each Party agrees to return to the producing Party within 30 days the original and all copies of documents exchanged in discovery and at the arbitration Hearing.

**12.  Non-waiver of this Agreement:**  A waiver of the right to arbitrate a specific Dispute or series of Disputes, as described above, does not relieve any Party from the obligation to arbitrate *other* Disputes, whether asserted as independent claims or as permissive or mandatory counterclaims, unless each such claim is also individually waived.  With multiple Patient admissions, the presentation of an arbitration agreement at a later admission to the Center or a Sister Center shall not constitute a waiver by the Center of a prior signed arbitration agreement.

**13.  Severability:**  Except as provided in 6, any provision contained in this Agreement is severable, and if a provision is found to be unenforceable under State or Federal law, the remaining provisions of this Agreement shall remain in force and effect.  This Agreement represents the Parties' entire agreement

regarding Disputes, supersedes any other agreement relating to disputes, and may only be changed in writing signed by all the Parties. This Agreement shall remain in full force and effect notwithstanding the termination, cancellation or natural expiration of the Admission Agreement.

**14. Health Care Decision:** The Parties hereby stipulate that the decision to have the Patient move into this Center and the decision to agree to this Agreement are each a health care decision. The Parties stipulate that there are other health care facilities in this community currently available to meet the Patient's needs.

**THE PARTIES CONFIRM THAT EACH OF THEM UNDERSTANDS THAT EACH HAS WAIVED THE RIGHT TO TRIAL BEFORE A JUDGE OR JURY AND THAT EACH CONSENTS TO ALL OF THE TERMS OF THIS VOLUNTARY AGREEMENT. PATIENT ACKNOWLEDGES THE RIGHT TO REVIEW THIS AGREEMENT WITH AN ATTORNEY OR FAMILY BEFORE SIGNING.**


**PATIENT:**            **PATIENT'S LEGAL REPRESENTATIVE:**

_____     _____

Printed Name  (Date)      Printed Name       (Date)

_____     _____

Signature of Patient[7]       Signature of Patient's Legal

Representative[1] in his/her

Representative Capacity


**CENTER REPRESENTATIVE**    _____

---

[7] Mother's name was handwritten on the "Printed Name" line, but not signed on the "Signature of Patient" line. Agreement, p. 2.

Signature of Patient's Legal

_____  Representative in his/her

Signature of Center          Individual Capacity

Representative

_____

¹ Patient's Legal Representative should sign on <u>both lines</u> above containing the phrase "Patient's Legal Representative."[8]

Arbitration Agreement, Reproduced Record, pp. 1-2 (R.R., pp. 463a-464a) (all emphases in original).

"While an order denying preliminary objections is generally not appealable, there exists ... a narrow exception to this oft-stated rule for cases in which the appeal is taken from an order denying a petition to compel arbitration." *Midomo Co., Inc. v. Presbyterian Hous. Dev. Co.*, 739 A.2d 180, 184 (Pa.Super.1999) (internal quotations and brackets omitted). A separate petition to compel arbitration is not required, however. *Stewart v. GGNSC-Canonsburg, L.P.*, 9 A.3d 215, 218 (Pa.Super.2010). A party may appeal from an order denying a preliminary objection in the form of a petition to compel arbitration. *Id.*

"Our review of a claim that the trial court improperly denied appellants' preliminary objections in the nature of a petition to compel arbitration is limited to determining whether the trial court's findings are

_____

[8] Husband's name was handwritten on the "Printed Name" line for Patient's Legal Representative. Agreement, p. 2. Husband signed both lines provided for Patient's Legal Representative. *Id.*

supported by substantial evidence and whether the trial court abused its discretion in denying the petition." **Midomo**, 739 A.2d at 186.

> When one party to an agreement seeks to prevent another from proceeding to arbitration, judicial inquiry is limited to determining (1) whether a valid agreement to arbitrate exists between the parties and, if so, (2) whether the dispute involved is within the scope of the arbitration provision. An agreement to arbitrate a dispute is an agreement to submit oneself as well as one's dispute to the arbitrators' jurisdiction.
>
> Furthermore, arbitration is a matter of contract and, as such, it is for the court to determine whether an express agreement between the parties to arbitrate exists. Because the construction and interpretation of contracts is a question of law, the trial court's conclusion as to whether the parties have agreed to arbitrate is reviewable by this Court. Our review is plenary, as it is with any review of questions of law.

**Midomo,** 739 A.2d at 186-87 (internal citations, quotations, and footnotes omitted); **Gaffer Ins. Co., Ltd. v. Discover Reinsurance Co.**, 936 A.2d 1109, 1112-13 (Pa.Super.2007) (viewing question of whether, under the terms of an agreement, the parties are required to submit their dispute to arbitration as strictly one of contract interpretation).

In this matter, the trial court denied Appellants' request to compel arbitration in the form of preliminary objections because the court found the contract in question was an unconscionable contract of adhesion, and further that Husband was not competent to enter the Agreement. **See** 1925(a) Opinion, pp. 7-13. The trial court's opinion consists of a review of multiple Agreement terms, together with the court's critical editorial comments based on those Agreement terms, which comments are not necessarily based on

the record or any cited law. *Id.* The trial court ultimately determined that, based on the terms of the Agreement and the circumstances under which it was executed, the Agreement was unconscionable and thus no valid agreement to arbitrate existed. *Id.*

## 1. *Both Federal policy and State policy support arbitration.*

Initially, Appellants claim the trial court erred in refusing to enforce the Agreement based on erroneous policy arguments. *See* Appellants' Brief, pp. 19-24. We agree that the trial court failed to recognize and apply to the Agreement the liberal policy favoring arbitration contained in both the Federal Arbitration Act, 9 U.S.C. §§ 1-16 ("FAA"), and Pennsylvania law. Discussing this exact claim, this Court recently observed:

> Pennsylvania has a well-established public policy that favors arbitration, and this policy aligns with the federal approach expressed in the [FAA]. The fundamental purpose of the [FAA] is to relieve the parties from expensive litigation and to help ease the current congestion of court calendars. Its passage was a congressional declaration of a liberal federal policy favoring arbitration agreements.
>
> *Pisano* [*v. Extendicare Homes, Inc.*], 77 A.3d [651,] 661 [(Pa.Super.2013)] (citations, quotation marks, and footnote omitted); *see also Taylor v. Extendicare Health Facilities, Inc.,* 113 A.3d 317, 324 (Pa.Super.2015) ("Pennsylvania has a well-established public policy that favors arbitration, and this policy aligns with the federal approach expressed in the FAA"); *petition for allowance of appeal granted on other grounds,* 161 WAL 2015, 2015 WL 5569766 (Pa. September 23, 2015). This policy applies equally to all arbitration agreements, including those involving nursing homes. *See Marmet Health Care Center, Inc. v. Brown*, [__ U.S. __,] 132 S.Ct. 1201, 1203–1204 (2012) (holding that the FAA preempts state law that categorically prohibits arbitration of particular types of claims,

which is "contrary to the terms and coverage of the FAA"); *accord **Pisano***, 77 A.3d at 661 n. 7 (same). Thus, "when addressing the specific issue of whether there is a valid agreement to arbitrate, courts generally should apply ordinary state-law principles that govern the formation of contracts, but in doing so, must give due regard to the federal policy favoring arbitration." ***Gaffer*** []*,* 936 A.2d [at] 1114 [].

***MacPherson v. Magee Mem'l Hosp. for Convalescence***, \_\_\_ A.3d \_\_\_, 2015 WL 7571937 **7-8 (Pa.Super. Nov. 25, 2015). After discussing these policy concerns, the Court in ***MacPherson*** concluded:

> [T]he trial court's opinion includes cursory findings, a lack of substantive analysis, and a failure to discuss applicable law. As such, the decision below fails to recognize and apply the standards of the FAA and its liberal policy favoring arbitration.

***MacPherson***, 2015 WL 7571937 at *8.

Likewise, the trial court's opinion in the instant matter fails to discuss applicable law and instead relies on incredulous cursory findings based on conjecture, rhetorical questions, and hypotheticals. As in ***MacPherson***, the trial court has failed to recognize and apply the standards of the FAA and its liberal policy favoring arbitration.

**2. The Agreement is neither substantively nor procedurally unconscionable.**

In their second issue, Appellants challenge the trial court's determination that the Agreement was unenforceable as an unconscionable contract of adhesion. **See** Appellants' Brief, pp. 24-32. After reviewing and commenting on multiple Agreement terms, the trial court ruled as follows:

For all the above reasons[9], this court found that the Agreement in the instant case is unconscionable and voidable. Neither [Mother] nor Husband was competent on the day of her admission. [Mother] was in so much pain that [Appellants] agreed with her that she was unable to sign admission documents. [Appellants] rushed to conclude the paperwork by having [Husband] sign even though he was not competent to even realize he was [Mother's] power of attorney.

The Agreement is procedurally unconscionable because it was presented to Husband who basically signed the paperwork, including the Agreement, without full knowledge of its binding terms and conditions. It was not [Mother] who executed the Agreement; Husband simply signed as a formality because he was told that he could do so as a spouse.

There was also a great disparity in the bargaining positions between the parties. Even if Husband understood what he was doing – that he was doing it because he had a power of attorney, and what the entire agreement said and meant, he still could not negotiate this agreement in any way. He had to take the Agreement as is.

The Agreement is substantively unconscionable because it violates public policy. In the case *sub judice*, [Mother's] voluntary waiver of a right to a jury trial is not a knowing waiver. Neither she nor Husband understood what they might be waiving – she, because of the pain and he because of his incompetency. There is no evidence that [Mother] even knew that Husband waived a jury trial or even a court proceeding. Neither [Mother] nor Husband is an attorney or a businessperson experienced in the law. This court cannot conclude that [Mother] or Husband understood their rights. Therefore, this court concluded that Husband lacked informed consent when he agreed to waive the resolution of all future disputes in a court of law in favor of private arbitration, *even if he had legal authority to bind his wife*.

---

[9] **See** 1925(a) Opinion, pp. 8-11, for extended discussion of reasons discussed in this block quote.

1925(a) Opinion, pp. 12-13 (emphasis in original). This conclusion is unsupported by the record.

The party challenging a contract bears the burden of proving unconscionability. *Salley v. Option One Mortg. Corp.*, 925 A.2d 115 (Pa.2007). "'Unconscionability' is a defensive contractual remedy which serves to relieve a party from an unfair contract or from an unfair portion of a contract." *Germantown Mfg. Co. v. Rawlinson*, 491 A.2d 138, 145 (Pa.Super.1985). In Pennsylvania, "[u]nconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties together with contract terms which are unreasonably favorable to the other party." *Witmer v. Exxon Corp.*, 434 A.2d 1222, 1228 (Pa.1981); *see also McNulty v. H&R Block, Inc.*, 843 A.2d 1267, 1273 (Pa.Super.2004) ("[a] determination of unconscionability requires a two-fold determination: 1) that the contractual terms are unreasonably favorable to the drafter, and 2) that there is no meaningful choice on the part of the other party regarding the acceptance of the provisions."). Otherwise stated, contractual unconscionability is shown by the illustration of both procedural and substantive unconscionability, although not necessarily in equal proportion.

> [Procedural] unconscionability involves contractual terms which are not typically expected by the party who is being asked to "assent" to them. An unexpected clause often appears in the boilerplate of a printed form and, if read at all, is often not understood. By signing such a form, a party is bound only to those terms which such party would reasonably expect such a printed form to contain. If the form contains a material, risk-

shifting clause which the signer would not reasonably expect to encounter in such a transaction, courts have held that the clause may be excised as it is unconscionable.

***Germantown Mfg.***, 491 A.2d at 146. "Substantive unconscionability" refers to contractual terms that are "unreasonably favorable to the drafter[.]" ***Huegel v. Mifflin Const. Co., Inc.***, 796 A.2d 350, 357 (Pa.Super.2002). However, courts have refused to hold contracts unconscionable simply because of a disparity in bargaining power. ***Witmer***, 434 A.2d at 1228.

"An adhesion contract is a 'standard-form contract prepared by one party, to be signed by the party in a weaker position, usu[ally] a consumer, who adheres to the contract with little choice about the terms.'" ***Chepkevich v. Hidden Valley Resort, L.P.***, 2 A.3d 1174, 1190 (Pa.2010) (*quoting* Black's Law Dictionary (8th Ed. 2004), p. 342). "[T]he determination that an adhesion contract is at issue, by definition fulfills the second prong of the unconscionability test." ***McNulty***, 843 A.2d at 1273 n.6.

Initially, at the top of the first page, in bold, capitalized typeface and underlined, the Agreement states that it is voluntary, and that the patient will receive services in the center regardless of whether the Agreement is signed. Agreement, p. 1. The Agreement also contains, directly above the signature lines on the second page, another conspicuous, large, bolded notification that by signing, the parties agree to waive their right to a trial before a judge or jury. ***See id.*** at 2. The Agreement states that Manor Care

- 15 -

will pay the arbitrators' fees and costs, and that there are no award caps or damage limitations beyond those already imposed by law. *Id.* at ¶ 6. The Agreement provides a 30-day period during which the parties have an opportunity to review and rescind acceptance. *Id.* at ¶ 8. Further, the Agreement includes a standard confidentiality provision. *Id.* at ¶ 11. Our review of these and the other provisions of the Agreement compel the conclusion that the Agreement is neither procedurally nor substantively unconscionable under Pennsylvania law.[10] *See MacPherson*, 2015 WL 7571937, at **9-10 (holding substantially similar arbitration agreement not unconscionable).

_____

[10] The trial court summed up its conclusion that the Agreement was unconscionable by stating:

> Husband is not a sophisticated businessman or a health services worker. He is eighty-seven years old and has memory problems. Husband did not even read the Agreement. No evidence was produced that showed Husband had the acumen to negotiate with [Appellants] on an equal footing even if he read and understood the Agreement.

1925(a) Opinion, p. 11. We find that Husband's age, education level, and business acumen at the time he entered into the Agreement on Mother's behalf were not of Appellants' creation, were beyond Appellants' control, and are immaterial to the enforceability of the terms of the Agreement. In short, Husband's age, education level, and business acumen do not render the Agreement procedurally unconscionable.

**3. No competent evidence indicates Husband was incompetent at the time he signed the Agreement on Mother's behalf.**

Third, Appellants argue the trial court erred as a matter of law in finding, *sua sponte*, that Husband lacked capacity to sign the Agreement. **See** Appellants' Brief, pp. 35-38. Appellants are correct.

> Under Pennsylvania law, a signed document gives rise to the presumption that it accurately expresses the state of mind of the signing party. The presumption is rebutted where the challenger presents clear and convincing evidence of mental incompetence. Mental incompetence is established through evidence that the person is unable to understand the nature and consequences of the transaction. A presumption of mental incapacity does not arise merely because the disposition of the property seems unreasonable.

**Forman v. Pub. Sch. Employes' Ret. Bd.**, 778 A.2d 778, 780 (Pa.Commw.Ct.2001) (internal citations omitted).[11] "It is well settled that mere weakness of intellect resulting from sickness or old age is not legal grounds to set aside an executed contract if sufficient intelligence remains to comprehend the nature and character of the transaction, and no evidence of fraud, mutual mistake or undue influence is present." **Taylor v. Avi**, 415 A.2d 894, 897 (Pa.Super.1979). Testimony of the party arguing incapacity alone, even where credible, is insufficient as a matter of law to establish a claim of mental incompetence. **See Forman**, 778 A.2d at 780.

---

[11] "Although decisions of the Commonwealth Court are not binding on this Court, we may rely on them if we are persuaded by their reasoning." **Charlie v. Erie Ins. Exch.,** 100 A.3d 244, 253 n.9 (Pa.Super.2014) (citation omitted).

Here, Husband was Mother's DPOA at the time he signed the Agreement on her behalf. Mother testified that she removed Husband as her DPOA three months after he signed the Agreement because he was forgetful and unstable. At his deposition one year and ten months after the Agreement was signed, Husband stated the incorrect address of his residence. Husband did not testify, however, that he was incompetent at the time he entered into the Agreement. In fact, the only testimony regarding Husband's mental capacity at the time Husband signed the Agreement came from Lynette Seiler Wirth, Manor Care's Nursing Home Administrator. Ms. Wirth testified that, at the time he signed the Agreement, Husband was very alert and asked multiple questions about the Agreement. Ms. Wirth further testified that, after she went over the Agreement with Husband, he accepted some contractual provisions on his wife's behalf and declined others.[12] Based on this evidence, the trial court concluded *sua sponte* that Husband was incompetent when he entered into the Agreement. *See* 1925(a) Opinion, pp. 7.

Simply stated, the record does not support the trial court's conclusion. Mother's testimony, standing alone, is insufficient to establish her claim of Husband's incompetence. *See Forman*, 778 A.2d at 780. Further, neither

_____

[12] For example, Husband declined to sign and participate in the Resident's Personal Trust Fund Agreement, which Ms. Wirth explained and proposed contemporaneously with the Agreement.

Mother's testimony regarding her assessment of Husband's mental capabilities three months after he signed the Agreement, nor Husband's performance at his deposition nearly two years after the signing of the Agreement, suffice to illustrate Husband's lack of capacity at the time he entered into the Agreement. *See Taylor*, 415 A.2d at 897 ("(W)here mental capacity is at issue, the real question is the condition of the person at the very time he executed the instrument . . ."). Ms. Wirth's testimony certainly did not establish by clear and convincing evidence that Husband was incompetent to enter the Agreement. To the contrary, that Ms. Wirth indicated Husband was alert and asked questions about the Agreement serves to illustrate his capacity to understand that he was entering a contract on Mother's behalf. Accordingly, the trial court erred by *sua sponte* concluding Husband was incompetent to enter into the Agreement.

### 4. Husband knowingly waived the right to a jury trial on Mother's behalf.

Finally, Appellants claim that the trial court erred in concluding Husband did not knowingly waive Mother's right to a jury trial when he signed the Agreement without reading it. *See* Appellants' Brief, pp. 33-35. We agree.

The Agreement adequately informed Husband he was waiving Mother's right to a jury trial. The following warning appears at the very top of the Agreement in conspicuous, bold, all-uppercase printing:

**THE PARTIES ARE WAIVING THEIR RIGHT TO A TRIAL BEFORE A JUDGE OR JURY OF ANY DISPUTE BETWEEN**

**THEM. PLEASE READ CAREFULLY BEFORE SIGNING. THE PATIENT WILL RECEIVE SERVICES IN THIS CENTER WHETHER OR NOT THIS AGREEMENT IS SIGNED. ARBITRATION IS DESCRIBED IN THE VOLUNTARY ARBITRATION PROGRAM BROCHURE COPY, ATTACHED AND MADE PART OF THIS AGREEMENT.**

*See* Agreement, p. 1. Again, immediately preceding the signature lines, the Agreement states, once more in bold, all-uppercase printing:

**THE PARTIES CONFIRM THAT EACH OF THEM UNDERSTANDS THAT EACH HAS WAIVED THE RIGHT TO TRIAL BEFORE A JUDGE OR JURY AND THAT EACH CONSENTS TO ALL OF THE TERMS OF THIS VOLUNTARY AGREEMENT. PATIENT ACKNOWLEDGES THE RIGHT TO REVIEW THIS AGREEMENT WITH AN ATTORNEY OR FAMILY BEFORE SIGNING.**

*Id.* at 2.

Even if Husband, as the trial court suggests, did not read the Agreement because he "simply took [the administrator's] word about what he was supposed to sign . . . and had just agreed to sign whatever document had been placed before him[,]"[13] such an argument would not afford Appellee relief. 1925(a) Opinion, p. 4 (internal quotations and citation omitted). This Court has repeatedly instructed that "[i]t is well established that, in the absence of fraud, the failure to read a contract before signing it is 'an unavailing excuse or defense and cannot justify an avoidance,

_____

[13] We note that Husband signed the Agreement two days after Manor Care admitted Mother. Accordingly, he could not have believed her admission was contingent on his signing the Agreement.

modification or nullification of the contract'; it is considered 'supine negligence.'" *In re Estate of Boardman*, 80 A.3d 820, 823 (Pa.Super.2013) (*citing* *Germantown Sav. Bank v. Talacki*, 657 A.2d 1285, 1289 (Pa.Super.1995)).

Further, the Agreement provided Mother and Husband with a period during which they could review and revoke acceptance of the Agreement if they changed their minds. *See* Arbitration Agreement ¶ 8. They did not avail themselves of this opportunity.

In light of the liberal policy favoring arbitration agreements, and for the reasons stated above, we reverse and remand this case for proceedings consistent with this memorandum.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 1/12/2016